IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION   JAN 1 0 2005



| | | |
|---|---|---|
| DENNIS DOWNIE, et al., | ) | **MICHAEL W. DOBBINS** |
| | ) | **CLERK, U.S. DISTRICT COURT** |
| Plaintiffs, | ) | DOCKETED |
| | ) | |
| v. | ) No. 89 C 2937 | JAN 1 2 2005 |
| | ) | |
| PAUL KLINCAR, et al., | ) The Hon. James B. Moran | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF MOTION

**TO:** (See attached Service List)

Tuesday Feburary 1,

**PLEASE TAKE NOTICE** that on ~~Wednesday, January 19~~, 2005 at 9:00 a.m. we will appear before The Honorable James B. Moran, in courtroom 1843, at the U.S. District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois, and will then and there present **Motion of Plaintiff Class Member Darrell Cannon for Leave to Intervene and for Finding of Contempt**, a copy of which is attached and served upon you.

_____
Locke E. Bowman

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 E. 60th Street
Chicago, IL 60637
(773) 753-4405

41

**SERVICE LIST**
Cannon, et. al. v. Klincar, et. al.; No. 89 C 2937

Charles Hoffman
Assistant Defender
Supreme Court Unit
Office of the State Appellate Defender
600 W. Jackson Boulevard, Suite 600
Chicago, Illinois 60661
(312) 814-5100
(312) 814-5951 (Fax)

Flint G. Taylor, Jr.
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
(773) 235-0070
(773) 235-6699 (Fax)

Ronald A. Rascia
Assistant Attorney General & Unit Supervisor
General Law Bureau
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3647
(312) 814-4425 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 1 0 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JAN 1 2 2005

| | |
|---|---|
| DENNIS DOWNIE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 89 C 2937 |
| PAUL KLINCAR, et al., | ) The Hon. James B. Moran |
| Defendants. | ) |

### MOTION OF PLAINTIFF CLASS MEMBER DARRELL CANNON FOR LEAVE TO INTERVENE AND FOR A FINDING OF CONTEMPT

Darrell Cannon, by his undersigned attorneys, respectfully moves this Court pursuant to Rule 71 of the Federal Rules of Civil Procedure and Local Rule 37.1 for leave to intervene in this case and for entry of an order finding the defendant members of the Illinois Prisoner Review Board (the "PRB") in contempt of this Court for violating the Agreed Final Order entered in this cause on July 17, 1991 (hereinafter, the "Consent Decree" or the "Decree"). In support, Mr. Cannon states:

2. This case was filed as a class action in order to redress the due process rights of Illinois parolees who have been accused of violating the conditions of their parole. At the conclusion of this case, this Court entered a Consent Decree (a copy of which is attached as Ex. A), which governs the conduct of parole revocation hearings by the Illinois Prisoner Review Board (the "PRB"). The Decree protects the right of alleged parole violators to confront and cross examine persons who have provided information upon which the PRB may rely in revoking those individuals' parole.

3. Mr. Cannon, who is within the group of persons on whose behalf this action was commenced, is filing this motion because the PRB, in its September 9, 2004 decision revoking

41

his parole, violated the terms of this Court's Consent Decree. The parole revocation decision in Mr. Cannon's case, a copy of which is attached as Ex. B, was based principally upon the (since recanted) grand jury testimony of a certain witness whom Mr. Cannon never had the opportunity to confront and cross examine. There was not "good cause" for the PRB to rely on this rank hearsay and, thus, the PRB's action in Mr. Cannon's September 2004 parole case violated the unambiguous terms of this Court's Decree.

### Intervention

4. Rule 71 of the Federal Rules of Civil Procedure provides that a person on whose behalf an order has been entered may enforce obedience to that order even if he was not a party to the original proceeding. The complaint in this case was styled as a class action on behalf, inter alia, of all parolees who have been or will be charged with violating their parole, thus making it clear that persons, such as Mr. Cannon, who might in the future be charged with parole violations were intended, and not merely incidental, beneficiaries of any relief that might be obtained in the case. Although, apparently, no class certification order was ever entered, this case was terminated with the Consent Decree, which expressly governs the conduct of all parole hearings – including the hearing at which Mr. Cannon was adjudged a parole violator.

5. Mr. Cannon is unquestionably a person in whose favor the Consent Decree was entered. Therefore, Mr. Cannon has standing under Rule 71 to compel the PRB to abide by the Decree. *See, e.g., Hook v. Arizona*, 972 F.2d 1012, 1014 (9th Cir. 1992) ("intended third party beneficiaries of a consent decree have standing to enforce the decree"); *Berger v. Heckler*, 771 F.2d 1556, 1565-66 (2d Cir. 1985) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree."); *see also South v. Rowe*, 759 F.2d 610, 612 n. 1 (7th

Cir. 1985) (holding that Rule 71 bolstered the conclusion that an intended third-party beneficiary of a consent decree could intervene pursuant to Rule 24(a)(2) to enforce that decree). Mr. Cannon should therefore be permitted to intervene in this cause in order to enforce the requirements of this Court's Decree.

## Grounds for a Finding of Contempt

5. This Court unquestionably possesses the inherent authority to enforce compliance with its orders. *United States v. Dowell*, 257 F.3d 694, 697 (7th Cir. 2001). The court may hold a party in contempt upon a finding that that party has "violated an order that sets forth in specific detail an unequivocal command from the court." *Ibid.* After such a finding has been made, the court has broad discretion to fashion a remedy based upon the nature of the harm and the steps that may be necessary to coerce compliance with the court's order. *Connolly v. J. T. Ventures*, 851 F.2d 930, 932-33 (7th Cir. 1988), *citing United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). In this case, the use of the contempt power is appropriate, as Mr. Cannon shows below, because of the defendants' failure to afford him the opportunity to confront and cross examine the witnesses against him at his parole hearing, in violation of the clear requirement of the Consent Decree.

6. The PRB convened a parole revocation hearing in August and September 2004 to address the allegation that in October 1983 Mr. Cannon, while on parole, had violated Illinois law by committing the murder of one Darren Ross.[1] At that hearing, the PRB received in

---

[1] Highly unusual circumstances led to the commencement of this parole revocation hearing nearly 21 years after the alleged violation. At the time of the alleged offense, Mr. Cannon was charged criminally with the Ross murder and was also was also charged with this parole violation. Mr. Cannon was convicted of the criminal charge in 1984 and the PRB never pursued a final hearing on the parole violation. A lengthy appellate and post-conviction process followed Mr. Cannon's criminal conviction. In those proceedings, Mr. Cannon contended that his confession to the murder – the only evidence in the criminal case linking him to the crime – was produced by horrific acts of torture perpetrated by Area 2 Chicago Police detectives working for the infamous Jon Burge. In the wake of an Illinois Appellate Court decision requiring a full hearing on Mr. Cannon's torture claim (*People v. Cannon*, 293 Ill. App. 3d 634 (1st Dist. 1997)), the Cook County State's Attorney dismissed all criminal charges against Mr. Cannon in April

3

evidence the transcript of grand jury testimony given by one Tyrone McChristian ("Tyrone") on October 31, 1983. In his grand jury testimony, Tyrone claimed that Mr. Cannon plotted the Ross murder with Tyrone's brother, A.D. McChristian ("A.D."), and that Mr. Cannon supplied A.D. with the gun that A.D. used to kill Ross.

7. It has never been disputed that Mr. Cannon himself did not kill Ross. Therefore, the only theory under which Mr. Cannon could be found guilty of the Ross murder is by accountability. Apart from a confession tortured from him by Chicago police detectives working under Jon Burge (*see* footnote 1, *supra*), Tyrone's grand jury testimony is the *only evidence* tending to show Mr. Cannon's accountability under Illinois law for the murder.

8. Tyrone was not called as a witness at the parole revocation hearing. Nor had the state called Tyrone as a witness at either of Mr. Cannon's two criminal trials. Thus, Mr. Cannon has never had the opportunity to confront and cross examine Tyrone regarding the claims in his grand jury testimony. Nonetheless, the PRB "relied upon the Grand Jury testimony of Tyrone McChristian" in revoking Mr. Cannon's parole. It was a plain violation of the Decree for the PRB to do so.

9. The Decree provides that, in all parole revocation hearings, "[t]he alleged violator has a right to confront and cross examine persons who have provided adverse information, whether in a document or by means of live testimony, upon which a charge of violation is based." Decree, ¶ 4.

10. The Decree allows for an exception to this requirement *if* there is "good cause" for denying confrontation as set forth in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Id.* at ¶ 4(c). However, the Decree specifies that "[a]ny finding of 'good cause' must be placed on the record

---

2004. It was only upon the dismissal of the criminal case that the PRB elected to move forward with the parole revocation hearing.

4

*and must be consistent with the indicators of reliability described in paragraph 5* [of the Decree]." *Ibid.*

11. Paragraph 5, captioned "Indicators of Reliability," permits reliance upon prior, sworn testimony, but only if that testimony was subject to cross examination. The Decree excuses confrontation, authorizes a finding of "good cause," and permits reliance upon documentary evidence where "[t]he documentation is a transcript of testimony under oath in another setting, *where the parolee had the opportunity to cross-examine the witness whose testimony or report is at issue in the revocation proceedings.*" Decree, ¶ 5(b) (emphasis added).

12. The PRB's decision purported to find "good cause" for relying on Tyrone's grand jury testimony. But this Court's Decree is unambiguous and leaves no room for such a finding. Under the Decree, "good cause" may only be found in a manner *consistent* with the Indicators of Reliability in paragraph 5. *See* Decree, ¶ 4(c). With respect to prior testimony, paragraph 5 states that there is an indication of reliability only where the parolee had the opportunity to cross examine the witness. Tyrone's prior testimony, however, was plainly *not* subject to cross examination by Mr. Cannon. Thus, it was necessarily *in*consistent with paragraph 5 – and a clear violation of the Decree – for the PRB to find that it had "good cause" to rely on Tyrone's testimony in revoking Mr. Cannon's parole.

13. Even apart from the explicit limitation on the use of prior testimony as set forth in paragraphs 4 and 5 of the Decree, the PRB's finding of "good cause" cannot be squared with the requirements of *Morrissey* as this Court has elucidated them. As this Court noted in its February 11, 1991 opinion in this case, the existence of "good cause" for dispensing with the right of confrontation "is determined by a balancing test, which weighs the reliability of the hearsay

5

evidence and the difficulty or cost of procuring and producing the witness." *Downie v. Klincar*, 759 F. Supp. 425, 426 (N.D. Ill. 1991).[2]

14. There is no finding in the PRB's September 9 decision regarding "the difficulty or cost of procuring and producing" Tyrone. The PRB's decision merely indicates that a subpoena could have been issued for Tyrone – a fact that, if anything, suggests that the cost the PRB would have incurred in bringing Tyrone to the hearing would not have been extraordinary.[3] With no finding as to this cost, it is apparent that the PRB could not have and did not perform the balancing analysis necessary to determine whether there was "good cause" to dispense with the right of confrontation at the hearing.

15. In addition, the PRB's determination that Tyrone's grand jury testimony was "reliable" is utterly without support. At the hearing, Mr. Cannon submitted a recent affidavit, signed by Tyrone, in which he recanted the portions of his grand jury testimony that implicated Mr. Cannon in plotting the Ross murder with A.D. In that affidavit, Tyrone stated that he had inculpated Mr. Cannon before the grand jury only because the police had threatened to charge *him* with murder if he did not.[4]

---

[2] The Decree incorporates the analysis of the right of confrontation reflected in the Court's opinion cited above. *See* Decree, ¶ 4(c).

[3] The PRB's decision suggests that *Mr .Cannon* could have obtained a subpoena requiring Tyrone's presence at the hearing. But, obviously, that is beside the point. It is not Mr. Cannon's responsibility to subpoena the witnesses against him.

[4] At Mr. Cannon's parole revocation hearing, two of the officers who investigated the Ross murder, Daniel McWeeney and Peter Dignan, asserted their Fifth Amendment privilege against self-incrimination when they were asked whether they had participated in coercing false testimony from Tyrone before the grand jury. The assertion of the Fifth Amendment by those officers leaves the strong inference that they did, in fact, coerce false testimony from him. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (A witness or party in a civil case retains the privilege to refuse to answer for fear of self-incrimination, but the fact-finder can make adverse inferences based on that refusal.) *See also Canter v. Cook County Officers Electoral Bd.*, 523 N.E.2d 1299 (1st Dist., 1988) (Negative inferences can be drawn when a non-party to an administrative proceeding refuses to testify based on the Fifth Amendment privilege against self-incrimination.).

16. These are hardly indicia of reliable testimony. Not only did Tyrone testify in secret (before the grand jurors, the prosecutor and no one else), but he has denied the truth of the testimony that he gave. Although the PRB claims to have found "corroboration" for Tyrone's testimony in Mr. Cannon's account of the day of the Ross murder, there is in fact absolutely no corroboration of the *inculpatory* portions of Tyrone's testimony – *i.e.*, that Mr. Cannon plotted the Ross murder with A.D. or that Mr. Cannon supplied the murder weapon to A.D.

17. In sum, the PRB could not and did not make a credible, good faith finding that there was "good cause" to dispense with the right of confrontation at Mr. Cannon's parole revocation hearing. The failure to afford Mr. Cannon that right was a deliberate, willful violation of this Court's decree.

18. The issue set forth in this motion is also presented (along with a number of others) in a lawsuit that Mr. Cannon recently filed in the Circuit Court of Cook County, *Cannon v. Illinois Prisoner Review Bd.*, No. 04 CH 16620. Mr. Cannon is filing this motion at this time to ensure that he preserves the opportunity to litigate the violation of his rights under this Court's Decree.

WHEREFORE, plaintiff class member Darrell Cannon respectfully requests that this Court enter an order (1) finding the defendant members of the Illinois Prisoner Review Board in contempt of this Court for violating the Consent Decree through their failure to afford Mr. Cannon the opportunity to confront and cross examine the witnesses against him at his parole

revocation hearing and (2) directing the defendants to conduct a new parole revocation hearing in Mr. Cannon's case in compliance with the requirements of the Decree.

Respectfully submitted,

**DARRELL CANNON**

By: _____
One of his attorneys

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 East 60th Street
Chicago, Illinois 60637
(773) 702-0349

G. Flint Taylor, Jr.
People's Law Office
1180 North Milwaukee
Chicago, Illinois 60622
(773) 235-0700

Charles W. Hoffman
Assistant Defender
Office of the State Appellate Defender
600 West Jackson Blvd.
6th Floor
Chicago, IL 60661
312-814-5100

Leah Epstein, a third year student at the University of Chicago Law School, also assisted in the preparation of this document.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served the foregoing document upon all parties listed on the attached service list by placing in a properly addressed envelope and depositing in the U.S. Mail located at 1111 E. 60th Street, Chicago, Illinois, before the hour of 5:00 p.m. on Monday, January 10, 2005.

_____
Locke E. Bowman

*See Case File for Exhibits*