IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 2 8 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| DENNIS DOWNIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 89 C 2937 |
| | ) | |
| PAUL KLINCAR, et al., | ) | The Hon. James B. Moran |
| | ) | |
| Defendants. | ) | |

## RE-NOTICE OF MOTION

**TO:** (See attached Service List)

      **PLEASE TAKE NOTICE** that on Tuesday, February 1, 2005 at 9:00 a.m. we will appear before The Honorable James B. Moran, in courtroom 1843, at the U.S. District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois, and will then and there present the attached **Motion of Plaintiff Class Member Darrell Cannon for Leave to Intervene and for Finding of Contempt.**

Locke E. Bowman

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 E. 60th Street
Chicago, IL 60637
(773) 753-4405

**SERVICE LIST**
Cannon, et. al. v. Klincar, et. al.; No. 89 C 2937

Charles Hoffman
Assistant Defender
Supreme Court Unit
Office of the State Appellate Defender
600 W. Jackson Boulevard, Suite 600
Chicago, Illinois 60661
(312) 814-5100
(312) 814-5951 (Fax)

Flint G. Taylor, Jr.
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
(773) 235-0070
(773) 235-6699 (Fax)

Ronald A. Rascia
Assistant Attorney General & Unit Supervisor
General Law Bureau
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3647
(312) 814-4425 (Fax)

IN THE UNITED STATES DISTRICT COURT *RECEIVED*
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 10 2005

| | | |
|---|---|---|
| DENNIS DOWNIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 89 C 2937 |
| | ) | |
| PAUL KLINCAR, et al., | ) | The Hon. James B. Moran |
| | ) | |
| Defendants. | ) | |

**MOTION OF PLAINTIFF CLASS MEMBER DARRELL CANNON FOR
LEAVE TO INTERVENE AND FOR A FINDING OF CONTEMPT**

Darrell Cannon, by his undersigned attorneys, respectfully moves this Court pursuant to

Rule 71 of the Federal Rules of Civil Procedure and Local Rule 37.1 for leave to intervene in this

case and for entry of an order finding the defendant members of the Illinois Prisoner Review

Board (the "PRB") in contempt of this Court for violating the Agreed Final Order entered in this

cause on July 17, 1991 (hereinafter, the "Consent Decree" or the "Decree"). In support, Mr.

Cannon states:

2.      This case was filed as a class action in order to redress the due process rights of

Illinois parolees who have been accused of violating the conditions of their parole. At the

conclusion of this case, this Court entered a Consent Decree (a copy of which is attached as Ex.

A), which governs the conduct of parole revocation hearings by the Illinois Prisoner Review

Board (the "PRB"). The Decree protects the right of alleged parole violators to confront and

cross examine persons who have provided information upon which the PRB may rely in

revoking those individuals' parole.

3.      Mr. Cannon, who is within the group of persons on whose behalf this action was

commenced, is filing this motion because the PRB, in its September 9, 2004 decision revoking

his parole, violated the terms of this Court's Consent Decree. The parole revocation decision in Mr. Cannon's case, a copy of which is attached as Ex. B, was based principally upon the (since recanted) grand jury testimony of a certain witness whom Mr. Cannon never had the opportunity to confront and cross examine. There was not "good cause" for the PRB to rely on this rank hearsay and, thus, the PRB's action in Mr. Cannon's September 2004 parole case violated the unambiguous terms of this Court's Decree.

### Intervention

4.     Rule 71 of the Federal Rules of Civil Procedure provides that a person on whose behalf an order has been entered may enforce obedience to that order even if he was not a party to the original proceeding. The complaint in this case was styled as a class action on behalf, inter alia, of all parolees who have been or will be charged with violating their parole, thus making it clear that persons, such as Mr. Cannon, who might in the future be charged with parole violations were intended, and not merely incidental, beneficiaries of any relief that might be obtained in the case. Although, apparently, no class certification order was ever entered, this case was terminated with the Consent Decree, which expressly governs the conduct of all parole hearings – including the hearing at which Mr. Cannon was adjudged a parole violator.

5.     Mr. Cannon is unquestionably a person in whose favor the Consent Decree was entered. Therefore, Mr. Cannon has standing under Rule 71 to compel the PRB to abide by the Decree. *See, e.g., Hook v. Arizona*, 972 F.2d 1012, 1014 (9th Cir. 1992) ("intended third party beneficiaries of a consent decree have standing to enforce the decree"); *Berger v. Heckler*, 771 F.2d 1556, 1565-66 (2d Cir. 1985) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree."); *see also South v. Rowe*, 759 F.2d 610, 612 n. 1 (7th

Cir. 1985) (holding that Rule 71 bolstered the conclusion that an intended third-party beneficiary of a consent decree could intervene pursuant to Rule 24(a)(2) to enforce that decree). Mr. Cannon should therefore be permitted to intervene in this cause in order to enforce the requirements of this Court's Decree.

### Grounds for a Finding of Contempt

5.      This Court unquestionably possesses the inherent authority to enforce compliance with its orders. *United States v. Dowell*, 257 F.3d 694, 697 (7th Cir. 2001). The court may hold a party in contempt upon a finding that that party has "violated an order that sets forth in specific detail an unequivocal command from the court." *Ibid.* After such a finding has been made, the court has broad discretion to fashion a remedy based upon the nature of the harm and the steps that may be necessary to coerce compliance with the court's order. *Connolly v. J. T. Ventures,* 851 F.2d 930, 932-33 (7th Cir. 1988), *citing United States v. United Mine Workers of America,* 330 U.S. 258, 303-04 (1947). In this case, the use of the contempt power is appropriate, as Mr. Cannon shows below, because of the defendants' failure to afford him the opportunity to confront and cross examine the witnesses against him at his parole hearing, in violation of the clear requirement of the Consent Decree.

6.      The PRB convened a parole revocation hearing in August and September 2004 to address the allegation that in October 1983 Mr. Cannon, while on parole, had violated Illinois law by committing the murder of one Darren Ross.[1] At that hearing, the PRB received in

---

[1]  Highly unusual circumstances led to the commencement of this parole revocation hearing nearly 21 years after the alleged violation. At the time of the alleged offense, Mr. Cannon was charged criminally with the Ross murder and was also was also charged with this parole violation. Mr. Cannon was convicted of the criminal charge in 1984 and the PRB never pursued a final hearing on the parole violation. A lengthy appellate and post-conviction process followed Mr. Cannon's criminal conviction. In those proceedings, Mr. Cannon contended that his confession to the murder – the only evidence in the criminal case linking him to the crime – was produced by horrific acts of torture perpetrated by Area 2 Chicago Police detectives working for the infamous Jon Burge. In the wake of an Illinois Appellate Court decision requiring a full hearing on Mr. Cannon's torture claim (*People v. Cannon,* 293 Ill. App. 3d 634 (1st Dist. 1997)), the Cook County State's Attorney dismissed all criminal charges against Mr. Cannon in April

3

evidence the transcript of grand jury testimony given by one Tyrone McChristian ("Tyrone") on

October 31, 1983. In his grand jury testimony, Tyrone claimed that Mr. Cannon plotted the Ross

murder with Tyrone's brother, A.D. McChristian ("A.D."), and that Mr. Cannon supplied A.D.

with the gun that A.D. used to kill Ross.

7.      It has never been disputed that Mr. Cannon himself did not kill Ross. Therefore,

the only theory under which Mr. Cannon could be found guilty of the Ross murder is by

accountability. Apart from a confession tortured from him by Chicago police detectives working

under Jon Burge (*see* footnote 1, *supra*), Tyrone's grand jury testimony is the *only evidence*

tending to show Mr. Cannon's accountability under Illinois law for the murder.

8.      Tyrone was not called as a witness at the parole revocation hearing. Nor had the

state called Tyrone as a witness at either of Mr. Cannon's two criminal trials. Thus, Mr. Cannon

has never had the opportunity to confront and cross examine Tyrone regarding the claims in his

grand jury testimony. Nonetheless, the PRB "relied upon the Grand Jury testimony of Tyrone

McChristian" in revoking Mr. Cannon's parole. It was a plain violation of the Decree for the

PRB to do so.

9.      The Decree provides that, in all parole revocation hearings, "[t]he alleged violator

has a right to confront and cross examine persons who have provided adverse information,

whether in a document or by means of live testimony, upon which a charge of violation is

based." Decree, ¶ 4.

10.     The Decree allows for an exception to this requirement *if* there is "good cause" for

denying confrontation as set forth in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Id.* at ¶ 4(c).

However, the Decree specifies that "[a]ny finding of 'good cause' must be placed on the record

---

2004. It was only upon the dismissal of the criminal case that the PRB elected to move forward with the parole
revocation hearing.

*and must be consistent with the indicators of reliability described in paragraph 5* [of the Decree]." *Ibid.*

11. Paragraph 5, captioned "Indicators of Reliability," permits reliance upon prior, sworn testimony, but only if that testimony was subject to cross examination. The Decree excuses confrontation, authorizes a finding of "good cause," and permits reliance upon documentary evidence where "[t]he documentation is a transcript of testimony under oath in another setting, *where the parolee had the opportunity to cross-examine the witness whose testimony or report is at issue in the revocation proceedings*." Decree, ¶ 5(b) (emphasis added).

12. The PRB's decision purported to find "good cause" for relying on Tyrone's grand jury testimony. But this Court's Decree is unambiguous and leaves no room for such a finding. Under the Decree, "good cause" may only be found in a manner *consistent* with the Indicators of Reliability in paragraph 5. *See* Decree, ¶ 4(c). With respect to prior testimony, paragraph 5 states that there is an indication of reliability only where the parolee had the opportunity to cross examine the witness. Tyrone's prior testimony, however, was plainly *not* subject to cross examination by Mr. Cannon. Thus, it was necessarily *in*consistent with paragraph 5 – and a clear violation of the Decree – for the PRB to find that it had "good cause" to rely on Tyrone's testimony in revoking Mr. Cannon's parole.

13. Even apart from the explicit limitation on the use of prior testimony as set forth in paragraphs 4 and 5 of the Decree, the PRB's finding of "good cause" cannot be squared with the requirements of *Morrissey* as this Court has elucidated them. As this Court noted in its February 11, 1991 opinion in this case, the existence of "good cause" for dispensing with the right of confrontation "is determined by a balancing test, which weighs the reliability of the hearsay

5

evidence and the difficulty or cost of procuring and producing the witness." *Downie v. Klincar*, 759 F. Supp. 425, 426 (N.D. Ill. 1991).[2]

14.     There is no finding in the PRB's September 9 decision regarding "the difficulty or cost of procuring and producing" Tyrone. The PRB's decision merely indicates that a subpoena could have been issued for Tyrone – a fact that, if anything, suggests that the cost the PRB would have incurred in bringing Tyrone to the hearing would not have been extraordinary.[3] With no finding as to this cost, it is apparent that the PRB could not have and did not perform the balancing analysis necessary to determine whether there was "good cause" to dispense with the right of confrontation at the hearing.

15.     In addition, the PRB's determination that Tyrone's grand jury testimony was "reliable" is utterly without support. At the hearing, Mr. Cannon submitted a recent affidavit, signed by Tyrone, in which he recanted the portions of his grand jury testimony that implicated Mr. Cannon in plotting the Ross murder with A.D. In that affidavit, Tyrone stated that he had inculpated Mr. Cannon before the grand jury only because the police had threatened to charge *him* with murder if he did not.[4]

---

[2]   The Decree incorporates the analysis of the right of confrontation reflected in the Court's opinion cited above. *See* Decree, ¶ 4(c).

[3]   The PRB's decision suggests that *Mr . Cannon* could have obtained a subpoena requiring Tyrone's presence at the hearing. But, obviously, that is beside the point. It is not Mr. Cannon's responsibility to subpoena the witnesses against him.

[4]   At Mr. Cannon's parole revocation hearing, two of the officers who investigated the Ross murder, Daniel McWeeney and Peter Dignan, asserted their Fifth Amendment privilege against self-incrimination when they were asked whether they had participated in coercing false testimony from Tyrone before the grand jury. The assertion of the Fifth Amendment by those officers leaves the strong inference that they did, in fact, coerce false testimony from him. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (A witness or party in a civil case retains the privilege to refuse to answer for fear of self-incrimination, but the fact-finder can make adverse inferences based on that refusal.) *See also Canter v. Cook County Officers Electoral Bd.*, 523 N.E.2d 1299 (1ˢᵗ Dist., 1988) (Negative inferences can be drawn when a non-party to an administrative proceeding refuses to testify based on the Fifth Amendment privilege against self-incrimination.).

16.     These are hardly indicia of reliable testimony. Not only did Tyrone testify in secret (before the grand jurors, the prosecutor and no one else), but he has denied the truth of the testimony that he gave. Although the PRB claims to have found "corroboration" for Tyrone's testimony in Mr. Cannon's account of the day of the Ross murder, there is in fact absolutely no corroboration of the *inculpatory* portions of Tyrone's testimony – *i.e.*, that Mr. Cannon plotted the Ross murder with A.D. or that Mr. Cannon supplied the murder weapon to A.D.

17.     In sum, the PRB could not and did not make a credible, good faith finding that there was "good cause" to dispense with the right of confrontation at Mr. Cannon's parole revocation hearing. The failure to afford Mr. Cannon that right was a deliberate, willful violation of this Court's decree.

18.     The issue set forth in this motion is also presented (along with a number of others) in a lawsuit that Mr. Cannon recently filed in the Circuit Court of Cook County, *Cannon v. Illinois Prisoner Review Bd.*, No. 04 CH 16620. Mr. Cannon is filing this motion at this time to ensure that he preserves the opportunity to litigate the violation of his rights under this Court's Decree.

WHEREFORE, plaintiff class member Darrell Cannon respectfully requests that this Court enter an order (1) finding the defendant members of the Illinois Prisoner Review Board in contempt of this Court for violating the Consent Decree through their failure to afford Mr. Cannon the opportunity to confront and cross examine the witnesses against him at his parole

7

revocation hearing and (2) directing the defendants to conduct a new parole revocation hearing in

Mr. Cannon's case in compliance with the requirements of the Decree.

Respectfully submitted,

**DARRELL CANNON**

By: _____

One of his attorneys

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 East 60th Street
Chicago, Illinois 60637
(773) 702-0349

G. Flint Taylor, Jr.
People's Law Office
1180 North Milwaukee
Chicago, Illinois 60622
(773) 235-0700

Charles W. Hoffman
Assistant Defender
Office of the State Appellate Defender
600 West Jackson Blvd.
6th Floor
Chicago, IL 60661
312-814-5100

Leah Epstein, a third year student at the University of Chicago
Law School, also assisted in the preparation of this document.

8

# Exhibit A

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| Name of Assigned Judge or Magistrate | JAMES B. MORAN | Sitting Judge/Mag. If Other Than Assigned Judge/Mag. | |
|---|---|---|---|
| Case Number | 89 C 2937 | Date | July 16, 1991 |
| Case Title | DENNIS DOWNIE ET AL. VS PAUL KLINCAR ET AL. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3d-party plaintiff, and (b) state briefly the nature of the motion being presented]

Sent for Microfilming

JUL 17 1991

Filmed on

**DOCKET ENTRY:** (The balance of this form is reserved for notations by court staff.)

(1) [ ] Judgment is entered as follows:     (2) [X] [Other docket entry:]

Enter Agreed Final Order.

(3) [ ] Filed motion of [use listing in "MOTION" box above].
(4) [ ] Brief in support of motion due _____
(5) [ ] Answer brief to motion due _____ Reply to answer brief due _____
(6) [ ] Hearing [ ] Ruling on _____
(7) [ ] Status hearing [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(8) [ ] Pretrial conference [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(9) [ ] Trial [ ] set for [ ] reset for _____ at _____
(10) [ ] Bench trial [ ] Jury trial [ ] Hearing held and continued to _____
(11) [ ] This case is dismissed [ ] without [ ] with prejudice and without costs [ ] by agreement [ ] pursuant to
 [ ] FRCP 4(j) (failure to serve) [ ] General Rule 21 (want of prosecution) [ ] FRCP 41(a)(1) [ ] FRCP 41(a)(2)
(12) [X] [For further detail see [ ] order on the reverse of [X] order attached to the original minute order form.]

| | |
|---|---|
| [ ] No notices required. | number of notices |
| [ ] Notices mailed by judge's staff. | |
| [ ] Notified counsel by telephone. | date docketed |
| [ ] Docketing to mail notices. | JUL 17 1991 |
| [ ] Mail AO 450 form. | docketing dply. initials |
| [ ] Copy to judge/magistrate. | JUL 17 1991 date mld. notices |
| courtroom deputy's initials | Date/time received in central Clerk's Office | mailing dply initials |

Document # 38

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENNIS DOWNIE, et al.,                )
                                      )
        Plaintiffs,                   )   No. 89 C 2937
                                      )
v.                                    )   Judge Moran
                                      )
PAUL KLINCAR, et al.,                 )
                                      )
        Defendants.                   )

DOCKETED
JUL 17 1991

## AGREED FINAL ORDER

This cause coming on to be heard by agreement of the
Parties, after due notice, and the Court being duly advised as to
the circumstances,

IT IS HEREBY ORDERED:

1.   In all final parole revocation hearings, the
Prisoner Review Board, and each of its members, shall conduct the
final revocation hearings in such a manner that confrontation and
cross-examination of adverse witnesses is allowed as described
below.

2.   Standard of Proof.  The standard of proving
charges of a violation at a final parole/MSR revocation hearing
is a preponderance of the evidence.  If the evidence supporting
the charged violation as a whole shows that it is more probable
than not that the parolee has violated, as charged, then the
Board shall so find.  In those cases in which the evidence as a
whole does not show that it is more probable than not that the
parolee has violated, as charged, the Board shall find no
violation.

37

3.   Burden of Proof.  The charge of a violation, by itself, does not establish evidence of a violation.  If the charge is not admitted by the alleged violator, then the charge must be supported by some presentation of evidence sufficient to meet the burden of proof.  Except in those cases where a document bears, on its face, constitutionally adequate indicia of reliability or where an additional extrinsic factor enhances the reliability of the documentary evidence, the failure to call witnesses constitutes an absence of sufficient proof.  In such a case, the Board shall find that the parolee did not violate as charged.

4.   Confrontation.  The alleged violator has a right to confront and cross-examine persons who have provided adverse information, whether in a document or by means of live testimony, upon which a charge of violation is based.

a.   If the documentation itself contains a sufficient indicator of reliability, examples of which are listed below, the alleged violator need not be granted the right to confront, in person, the preparer of the documentation or any witness whose statements formed the substance of the documentation and the Board may then find a violation as charged. However, the Board may, in its discretion, allow confrontation even where a document contains a sufficient indicator of reliability.

b.   If the documentary evidence does not contain a sufficient indicator of reliability, the Board may not find

-2-

that the parolee violated as charged unless the right of confrontation is granted.

      c.   The Board may deny confrontation for "good cause" as described in <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972), and those cases cited in Judge Moran's Memorandum and Order dated February 11, 1991. Any finding of "good cause" must be placed on the record and must be consistent with the indicators of reliability described in paragraph 5 below.

      5.   Indicators of Reliability. Any one of the following factors may be accepted by the Board as an indication that documentary evidence alone may be relied upon to prove the charged violation. These factors are representative examples only and should not be construed as an exhaustive list.

      a.   The nature of the documentation proves, in itself, a certain geographical or biographical element of the violation or documentation prepared by the parole officer establishing a non-criminal violation of the conditions of parole. Example: (1) An out-of-state arrest report establishes parolee's whereabouts when absconsion is in issue; (2) Parolee is charged with failure to report monthly as ordered, and parole officer specifies the missed month or presents as evidence business records showing missed office visits.

      b.   The documentation is a transcript of testimony under oath in another setting, where the parolee had the opportunity to cross-examine the witness whose testimony or report is at issue in the revocation proceeding.

c. The documentation is a copy of a signed order or finding of a court of law or other competent tribunal which establishes the parolee's guilt of the criminal violation, which is the basis of the parole violation.

d. The documentation is a lab report or forensic evidence prepared by a competent scientific source, where the only issue is the subject-matter of the scientific report.

6. The Board may rely upon documentary evidence that contains none of the described indicators of reliability, even absent confrontation, if the documentary evidence is presented in conjunction with some additional extrinsic factor that adequately enhances the reliability of the documentary evidence.

7. Whether an additional extrinsic factor is sufficient to enhance the reliability of the documentary evidence must be determined by the Board on case-by-case basis.

8. A police or parole agent report which summarizes the statements or observations of a citizen (non-police) witness may bear sufficient reliability upon which to find a violation of parole, absent confrontation, if, and only if, some additional extrinsic factor is presented which adequately enhances the reliability of the police or parole agent report. Such a report, standing alone, unenhanced by any additional extrinsic factors, does not bear sufficient indicia of reliability to revoke parole absent confrontation.

9. An eye-witness police report (one that indicates that the officer who prepared the report claims to have seen the

-4-

alleged violation) may bear sufficient reliability upon which to find a violation of parole, absent confrontation, if, and only if, some additional extrinsic factor is presented which adequately enhances the reliability of the police or parole agent report. Such a report, standing alone, unenhanced by any additional extrinsic factors, does not bear sufficient indicia of reliability to revoke parole absent confrontation.

10. If a Board member determines that confrontation will not be allowed, that Board member must include on the record the specific reasons for not allowing confrontation.

11. This Order shall be applied consistent with the rules and regulations of the Board as found in Ill.Rev.Stat. Ch. 38, par. 1003-3-1 et seq. and Title 20, Ch. IV, Section 1610.140 of the Illinois Administrative Code and is intended to supersede or modify those rules only to the extent that they relate to the issue of confrontation at a final revocation hearing.

12. Defendants hereby agree to pay to plaintiff reasonable costs and attorneys' fees from monies properly appropriated by the State of Illinois and set aside for such purpose by the Department of Central Management Services.

13.  Plaintiffs release and discharge the Board, its members and the State of Illinois from any and all claims for damages resulting from those actions which formed the subject matter of this action.  Nothing in this order shall be construed as an admission of liability.

Dated: 7/16/9~

Enter: _James B. Moran_
The Honorable James B. Moran

Approved:

Dennis Downie
Robin Bargeron
Derek Whitney
on their own behalf
on behalf of all those
similarly situated,
Plaintiffs

James K. Williams, Chairman
Herb Brown
Corrine Franklin
Joseph Longo
Raphael Nieves
Sal Pisano
William Redmond
Joanne Shea
Ann Taylor
Tommy Wells,
Members of the Illinois
Prisoner Review Board, Defendants

Attorney for Plaintiffs

Attorney for Defendants

–6–

# Exhibit B

In Re: Darrell Cannon
Order and Rationale

## I. Introduction

On December 1, 1971, Darrell Cannon was sentenced to 100 to 200 years for committing the crime of murder. He was paroled from the Illinois Department of Corrections on January 25, 1983, but in November, 1983 the inmate was arrested and charged with committing a second murder that occurred on or about October 26, 1983. The inmate was served with a Notice of Charges on December 2, 1983, and at a preliminary hearing at the Cook County Jail on December 19, 1983, the hearing officer found probable cause that the prisoner violated his conditions of parole. On August 7, 1984, the Prisoner Review Board (hereafter the "Board") declared the inmate to be a violator of his original parole based on the inmate's conviction for murder. The inmate's convictions were later reversed, but the inmate has remained incarcerated on a Board hold. Negotiations in June, 2004, between the inmate and the Prisoner Review Board resulted in the agreement that a full revocation hearing should be conducted. Today the Board finds that the inmate Cannon has violated his parole by committing the crime of murder.

## II. Accountability Based on Tyrone McChristian's Testimony

The facts are that on October 26, 1983, A. D. McChristian and Darrell Cannon shot and killed the victim Darrin Ross while they were driving a car in Cook County, Illinois. The Board has analyzed the issue and reached its conclusion primarily on the following two factors. First, the Board relied on the Grand Jury testimony of Tyrone McChristian of October 31, 1983, because it finds there is "good cause" for its admission. In finding "good cause" the Board conducted a balancing test, weighing the interests of the inmate to cross-examine and confront the witness against the public's interest in the reliability of the hearsay evidence and the difficulty of producing the witness. The Board finds there is "good cause" to excuse the live testimony of Tyrone McChristian because it is reliable. Tyrone's statement fits the category of evidence that provides that a hearsay declarant's reasonably detailed statement is to be admitted, especially under circumstances where the parolee has corroborated the details of the statement. The Board disregarded the Affidavit of Tyrone McChristian where he repudiates or recants his prior sworn statement twenty-one years later. It should be noted that Tyrone McChristian grand jury testimony implicated his own testimony, A.D. McChristian. The Board notes that the inmate had the option to subpoena the witness and chose to proceed by way of Affidavit. The Board issued all subpoenae requested by Cannon.

Some, although not all, of the highlights from the statement that enhance its reliability—making it rise to the level of a firmly rooted hearsay exception—include the comments of animosity between the two McChristian brothers regarding the victim robbing drug dealers, the statement of the inmate that "this date never existed" appears in both Tyrone's and the inmate's testimony, Tyrone had conversations with AD and DC at the pool hall and agreed to take the inmate to 107th and Langley, Tyrone took the inmate to the house, and Tyrone described the exact words the inmate used when the murder was complete. To summarize, the statement contains the corroboration from the inmate and the specificity with the exact date, time, location, and words used to make its admission legally proper in our consideration. The Board finds no credence in the inmate's arguments that the only parts of Tyrone's statement that are not true are those parts that describe retrieving the weapon and passing it off the A.D. McChristian.

When the Board analyzes Tyrone's statement and juxtaposes it with the inmate's sworn testimony from 1984, 1994, and 2004, there is no doubt that the inmate committed the

crime of murder. Tyrone's statement informs us that the inmate and A.D. McChristian were generals in the El Rukns. He informs us that Ross, the victim, had been taking money from someone nicknamed the "robber." He further informs us of the plan to exact revenge on Ross and take control of drug territory. With Tyrone's informed and specific statement the Board sees "General DC" playing an integral and overt role in the crime of murder. The inmate was, at that time, a man intent on carrying out the wishes of his fellow gang member A.D. McChristian. The inmate's overt acts of retrieving the gun, passing the gun off to A.D., and driving the car so that A.D. could shoot the victim, all point to his accountability. Moreover, the circumstances and proximity of the shooting and the cover-up lead to only one conclusion—the inmate is accountable for the murder of the victim. He voluntarily attached himself to the common criminal design and participated at each and every phase of the crime. The inmate and A.D. McChristian shared the intent and the plan, and justice requires that the inmate be held accountable. The Board also notes that caselaw suggests that where gang evidence is properly admitted to show a motive for the crime, evidence that a defendant was a member of a gang or was involved in gang-related activity is admissible to show common design or purpose to offer a motive for an otherwise inexplicable act. People v. Smith, 141 Ill. 2d 40, 58, (1990).

III.   **Accountability Based on Cannon's Testimony**

The Board has also analyzed and evaluated the question as to whether the inmate could be held accountable for the crime of murder without the Grand Jury testimony of Tyrone McChristian. Relying solely on the sworn testimony of the inmate, the Board finds that Cannon has violated his parole by committing the offense of murder. The Board summarizes below those facts that establish that the inmate is accountable. The most telling moment in the hearing came when the inmate testified at Stateville Correctional Facility on August 27, 2004, that sometimes he tells the truth, sometimes he is willing to lie. The Board finds that the inmate has manipulated most of the details of the case from its inception. The Board considered his testimony often to be contrived and carefully tailored to meet the needs of the listener and the appellate record.

Based solely on his sworn testimony, on October 26, 1983, Cannon went to the Golden Cue pool hall in Chicago where he met Tyrone McChristian.[1] Tyrone told him that A.D. McChristian wanted to meet him at a girlfriend's house. This is where the common criminal design began. Tyrone drove the inmate to the house where A.D. McChristian and the victim Ross were waiting. The inmate testified that he accompanied A.D. McChristian as "back-up." At the house, the inmate spoke with A.D. The inmate testified that A.D. wanted him to go with him because he was "meeting some people." A.D. "wasn't sure about them" and A.D. "wanted the inmate to watch his back." The Board also considered that the inmate was a general in the El Rukns street gang and was on parole for murder.

At some point, the inmate was driving A.D.'s vehicle, with A.D. in the front passenger seat and the victim sitting directly behind the inmate. While the inmate drove, A.D. and Ross argued about a "robbery" and about the fact that "something was missing." The inmate later admitted that they were arguing about drugs and that A.D. wanted to know the identity of the other two people. While driving the vehicle, A.D. brandished a .32 caliber revolver and shot the victim two times in the head. Several more shots rang out and the victim was killed. At some point during the trip, Cannon or A.D. retrieved a towel from the trunk and wrapped it around the head of the victim so that the blood evidence would not get on the inside of the

---

[1] We have not included in our review any consideration of the inmate's statement to police taken by Area 2 detectives except those portions that the inmate admitted in motions and trial were true.

car. The inmate and A.D. drove around while a plan to dispose of the body emerged. They ultimately decided to dump the body in a prairie behind Altgeld Gardens. As A.D. got out of the vehicle, the inmate held the back seat with his hand and moved it so that A.D. could pull the body out of the vehicle.

The Board is entitled to draw rational inferences based on the facts and circumstances in this case. The Board rejects the inmate's denial that he did not see the gun in such close proximity. Given the location of the front seat and given the fact that there was only an armrest between them, it is a virtual impossibility. The Board does not believe that the inmate did not know that his friend of nineteen years had a gun. The Board dismisses the fact that the inmate did not know the shots were about to be fired, inasmuch as the victim was seated in the vehicle directly behind the inmate. Cannon knew the shooting was about to occur and aided and abetted in the planning and commission of the crime.

The Board rejects those arguments made by counsel that the actions of the inmate subsequent to the crime do not establish his "accountability" for the crime. The Board finds that the actions of the inmate following the shooting, and continuing until his most recent testimony establish his "consciousness of guilt." From these subsequent acts the Board infers Cannon's intent as that of aiding and abetting in the planning and commission of the crime. The inmate was present when the second set of shots was fired. He never disassociated himself from A.D., he maintained a close association with him as they removed the victim's body from the car, he tried to hide the blood evidence, dumped the body, left the scene, failed to notify the police, and continued planning a cover-up of the crime until they returned to see Tyrone and retrieved Cannon's car keys. The inmate was also found hiding naked under some clothes when the police arrived which shows consciousness of guilt. The inmate testified hat he called the police but hung up the phone when he thought they were going to trace the call.

The Board finds that A.D. McChristian and Cannon shared a common criminal design and the same intent. The inmate's participation in the criminal design started with his voluntary attachment to A.D. who was clearly bent on illegal acts, and it continued with his numerous overt acts during and after the crime. It was an intentional and volitional murder carried out by two people who shared the same mindset. The Board has considered the defendant's actions and finds that the inmate's role was active, participatory, and responsible under a theory of accountability.

## IV.   Response to Inmate's Arguments

The Board feels compelled to respond to some, but not all, of the inmate's arguments, although it has addressed some of these above. The Board disagrees with the notion that it is not allowed to consider the inmate's actions after the crime to establish his intent or accountability. The Board directed very specific questions during the revocation hearing regarding the law of accountability as it was presented by counsel for the inmate under People v. Perez, 189 Ill. 2d, 254 (Ill. 2000). Counsel for the inmate argued strenuously that the Board was not entitled to look to the actions of the inmate after the offense occurred. The Board has conducted its own review of the cases on this issue and stands on the arguments raised above. The Board acknowledges that while in isolation any one of the inmate's actions might seem innocuous, but when viewed as a whole, they show the true intent of the inmate.

## V.   Final Note and Conclusion

While the Board did not have to reach this issue, it feels that there is another basis to revoke the inmate's parole. Although the specific charge in the notice states murder, the

3

Board feels that the inmate was given actual notice of other grounds for revoking his parole (see attached Exhibit A). Although a review of federal and state cases reveal very little law on the issue, it is sufficient to suggest that the notice of charges in a probation or parole revocation setting need not be as specific as the charging instrument in a criminal indictment.

For all the reasons set forth above the Illinois Prisoner Review Board hereby revokes the parole of inmate Darfell Cannon.

_____
Jorge Montes, Chairman

_____
David Frier

_____
Andrew Fox

4

Exhibit A

PRELIMINARY PARO__ OR RELEASE VIOLATION HEARIN.. REPORT OF FINDING

In the matter of _Darrell Cannon)_ DOC No. _Pont. C-01592_
                    (Releasee's Name)

Releasee is accused of violating conditions of Release in the following regard (Specifically set forth in Notice of Charges).

1. _Crime Of Murder — Violation Of Rule #2_
2. _____
3. _____
            (Use reverse side for more violations, if listed)

Written Notice of Charges having been served on parolee by:

_ROBERT GUTHRIE_ , at _COOK COUNTY JAIL_
(Person delivering notice)         (Address where served)

On _12-2-83_ , the undersigned _S. L. BURFORD, HEARING OFFICER_
(Date served)                    (Name and Title)

having been duly appointed a Hearing Officer to conduct preliminary parole violation hearings did
hear the above matter at _COOK COUNTY JAIL – DIVISION ☒☒ SJ☒_
                              (Place of hearing)

at the hour of _12:30_ A.M. / P.M. on _DECEMBER 19th_ 19 _83_

and this Hearing Officer was not involved in the initial report of violations or recommended revocations.

After hearing is had, the undersigned does find that there is/there is not probable cause that the following conditions of parole have been violated and that the Prisoner Review Board shall conduct/shall not conduct a parole violation hearing on such alleged violations.

_____

_____

_____

The following is a list of the witnesses and documents presented at the hearings:

NOTICE OF CHARGES

ARREST REPORT

RAP SHEET

VIOLATION REPORT

The following is a summary of the evidence presented and the basis of my findings:

_Mr. Cannon does not admit guilt in this offense, stating_
_that he had no part in this offense. The Police are_
_attempting to implicate him in this offense. Mr. Cannon is_
_confident that he will be exhonorated, in Court. States_
_further that all information police has is circumstantial_
_that can not be proven. Based on existance police report_
_& indictment probable cause is found._     _Sheila L. Burford_   _12-19-83_
                                            _Hearing Officer_        (Date)

cc: White:      Board
    Green:      Hearing Officer
    Canary:     Institution
    Pink:       Releasee
    Goldenrod:  Parole Office

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that he served the foregoing document upon all parties listed on the attached service list by placing in a properly addressed envelope and depositing in the U.S. Mail located at 1111 E. 60th Street, Chicago, Illinois, before the hour of 5:00 p.m. on Monday, January 10, 2005.

_Locke E. Bowman_

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served the foregoing document upon all parties listed on the attached service list by facsimile before the hour of 5:00 p.m. on Friday, January 28, 2005.

Locke E. Bowman