**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*F I L E D*

FEB 2 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ROBIN BARGERON, et al.,            )
                                   )
            Plaintiffs,            )
                                   )
    v.                             )        Case No. 89 C 2937
                                   )
PAUL KLINCAR, et al.,              )        The Honorable Judge James B. Moran
                                   )
            Defendants,            )

## NOTICE OF FILING

TO:   See the attached Service List.

**PLEASE TAKE NOTICE** that on February 22, 2005, the attached **PRISONER REVIEW BOARD RESPONSE TO MOTION OF DARRELL CANNON TO INTERVENE AND FOR FINDING OF CONTEMPT**, was filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, at 219 South Dearborn Street, Chicago, Illinois 60604.

                              Respectfully submitted,


LISA MADIGAN                  _____
Attorney General of Illinois  RONALD A. RASCIA
                              Assistant Attorney General
                              Office of the Attorney General
                              100 W. Randolph St., 13th Flr.
                              Chicago, Illinois 60601
                              (312) 814-3647


89C2937Mot.wpd\RR.sd

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the attached document was served upon the following individuals:

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 E. 60th Street
Chicago, Illinois 60637
(773) 753-4405

Charles Hoffman
Assistant Defender
Supreme Court Unit
Office of the State Appellate Defender
600 W. Jackson Boulevard
Suite 600
Chicago, Illinois 60661
(312) 814-5100
(312) 814-5951 (fax)

Flint G. Taylor, Jr.
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
(773) 235-0070
(773) 235-6699 (Fax)

by U.S. Mail, postage prepaid, on the 22nd day of February, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

*FEB 2 2 2005*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

| | | |
|---|---|---|
| ROBIN BARGERON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 89 C 2937 |
| | ) | |
| PAUL KLINCAR, et al., | ) | The Honorable Judge James B. Moran |
| | ) | |
| Defendants, | ) | |

**PRISONER REVIEW BOARD'S OBJECTION AND RESPONSE TO
DARRELL CANNON'S PETITION FOR LEAVE TO INTERVENE
AND FOR FINDING OF CONTEMPT**

NOW COME Jorge Montes, Chairman of the Illinois Prisoner Review Board

David Frier, and Andrew Fox members of the Illinois Prisoner Review Board and

object to the Plaintiff's petition for leave to intervene and petition for contempt as

follows:

## PROCEDURAL HISTORY

Prior to August 27, 2004, Darrell Cannon sought a parole revocation hearing

to determined whether he violated parole in October 1985 in connection with the

Darren Ross homicide. The fact of hearing was not challenged by Plaintiff and his

counsel, rather they participated and presented evidence at the August 2004

hearing. The Prisoner Board of Review found Plaintiff to have violated his parole

based upon a number of matters before it. Plaintiff remains incarcerated. On

October 18, 2004, Darrell Cannon filed a complaint for mandamus and common law

1

certiorari in the Circuit Court of Cook County said matter is pending before the

Honorable Judge Patrick McGann in the Chancery Division. Said case is captioned

Darrell Cannon v. Illinois Prisoner Review Board, et al., 04 CH 16620. (A copy of

said complaint is attached as Exhibit #1). On December 6, 2004, the Defendants

filed a combined motion for dismissal pursuant to § 2-619.1 of the Illinois Court of

Civil Procedure. The motion is currently under consideration. The briefing

schedule requires Plaintiff to file a reply during the month of March, 2005.

On January 10, 2005, the Plaintiff filed this instant motion to intervene and

seek contempt under the Downie decree. The Downie case was closed by consent

order entry on July 16, 1991.

## ARGUMENT

### A. This Court should deny intervention because the issue of contempt is not ripe for adjudication until Judge McGann rules on the pending Circuit matter.

No legal basis exists for this Court to exercise jurisdiction by allowing

intervention and reopening the Downie decree at this juncture. Any claim that the

Prisoner Review Board is not following the mandate of Downie to the detriment of

any inmate such as petitioner Darrell Cannon, is easily resolved by the resolution of

the case in the state court. The Downie issue is fairly presented in the Plaintiff's

pleading before Circuit Court of Cook County and no prejudice would result by a

denial of the intervention at this time. Assuming arguendo, the Court's desire to

reopen the Downie case, the contempt proceedings should be stayed pending until

2

the Circuit Court of Cook County ruling.

### B. Because Fed. R. Civ. P. 71 is not an independent basis for intervention and Plaintiff does not meet the requirements of Fed. R. Civ. P. 24, intervention should be denied.

Plaintiff seeks intervention as a third party beneficiary. Plaintiff alleges his standing is that of a third party beneficiary. He has moved under Fed. R. Civ. P. 71 for intervention. Rule 71 provides that "when an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same processes as if he were a party." There is substantial authority for the proposition that a consent decree is not enforceable directly or in collateral proceedings by those who are not a parties to it even though they were intended to be benefitted by it. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) citing United States v. Armour & Co., 402 U.S. 673 (1971); Buckeye Coal & R Co v. Hocking Valley Co., 269 U.S. 42 (1925). Despite its seemingly sweeping proscription, Blue Chip Stamps has been interpreted narrowly so that certain third party beneficiaries may still sue to enforce a consent decree. A nonparty's status as a third party beneficiary in a consent decree would be a kind of interest meriting intervention. Under Hook v. State of Arizona Department of Corrections, 972 F.2d 1012, 1015 (9th Cir. 1992), an exception for would be Plaintiff who are intended versus incidental, third party beneficiaries of a decree. Plaintiff is an incidental third party beneficiary of the decree.

In support of the motion to intervene, Plaintiff asserts standing under Rule 71 to intervene to compel the Prisoner Review Board to abide by the decree in

3

Downie. Plaintiff's cites <u>Scott v. Rowe</u>, 752 F.2d 610 (7th Cir. 1985). In <u>Rowe</u>, the

Seventh Circuit overturned a trial court order allowing a current inmate Thomas

Redick, to intervene to enforce a consent decree negotiated by the State of Illinois

with plaintiff Gary South, a former inmate. The Court in <u>Rowe</u> held that Redick

could intervene as a matter of right pursuant to Fed. R. Civ. P. 24 which covers

mandatory and permissive intervention. The person has a right to intervene in an

action if 1) he "claims interest relating to the . . . transaction which is the subject of

the action", 2) "the disposition of the action may as a practical matter impair or

impede his ability to protect that interest", 3) "his interest is not adequately

represented by existing parties" and 4) the motion for intervention is "timely". Fed.

R. Civ. P. 24 (a)(2). The <u>Rowe</u> Court found that the first two requirements of

Federal Rule 24 (a)(2) were met as Redick, a current inmate user of the library, was

an intended third party beneficiary of the consent decree. Because South was no

longer an inmate when he negotiated the decree, the only explanation for the

decree's continued regulation of the library was to benefit current and future

inmates, who could avail themselves of the decree's enforcement provisions as third

parties beneficiaries. The Court emphasized that its conclusion that Redick's

interest merited intervention was bolstered by Congress's express directive " that

when an order is made in favor of a person who is not a party to the action, he may

enforce obedience to the order by the same process as if he were a party". Fed. R.

Civ. P. 71.

4

Therefore, Rule 71 does not constitute a sufficient bases for intervention by a third party beneficiary. Rather the requirements of Rule 24 must be met for an intervention to be merited. The proposed intervenor has the burden of proving each element and lack of even one element requires denial of the motion. Keith v. Daley, 764 F.2d 1265 (7th Cir. 1985) certiorari denied, 474 U.S. 980. Here, Mr. Cannon has not demonstrated his intervention is appropriate under Fed. R. Civ. P. 24. A case related to Mr. Cannon regarding the Downie decree and the reception of evidence by the Prisoner Review Board, is pending in the State Court. There is no basis for finding that the interest is not adequately represented in that matter. Rather than opening a fifteen year old consent decree, this Court can defer either totally or partially to the matter being consider by the State Court's action. Judicial economy would be served by avoiding a multiplicity of suits. Resources would be saved by not opening the Downie decree at this juncture given the existence of a remedy sought by movant intervenor Darrell Cannon in the Circuit Court of Cook County. Further, Cannon is an unnamed non-intervened member of class in the litigation and as such does not have standing to enforce the consent decree. Reynolds v. Butts, 312 F. 3d 1247 (11th Cir. 2002). This Court should find that Darrell Cannon lacks standing to intervene in the Downie decree under the factual circumstances and procedural posture of the case at this time.

Simply put, the petition to intervene or seek contempt is premature given the nature of the state court's proceedings.

5

WHEREFORE, Defendants pray this Honorable Court enter an order denying the petition for intervention or in the alternative stay said petition until such time as the state court has ruled in the underlined chancery matter in the Circuit Court of Cook County. Additionally if the Court allows intervention, Defendants seek an appropriate time within which to respond to any contempt petition.

Respectfully submitted,

Jorge Montes, David Frier
Andrew Fox as members of the
Illinois Prisoner Review Board

LISA MADIGAN
Attorney General of Illinois

By:

RONALD A. RASCIA
Assistant Attorney General
Office of the Attorney General
100 W. Randolph St., 13th Flr.
Chicago, Illinois 60601
(312) 814-3647

G:\89C2937Mot.wpd

6

Exhibit #1

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

DARRELL CANNON, )
                              )
    Plaintiff, )
                              )
      v. )
                              )
ILLINOIS PRISONER REVIEW BOARD; )
JORGE MONTES, Chairman of the Illinois )
Prisoner Review Board; ANDREW )
FOX, Member of the Illinois Prisoner )
Board; and DAVID FRIER, Member of the )
Illinois Prisoner Review Board, )
                              )
    Defendants. )

04CH16620

## COMPLAINT FOR MANDAMUS AND FOR COMMON LAW CERTIORARI

Plaintiff Darrell Cannon, by his undersigned attorneys, for his complaint for a writ of

mandamus and/or for a common law writ of certiorari against the Illinois Prisoner Review

Board; its Chairman, Jorge Montes; and Illinois Prisoner Review Board members Andrew Fox

and David Frier, alleges as follows:

### INTRODUCTION

1.      On November 2, 1983, while he was on parole, plaintiff Darrell Cannon was

arrested by Area 2 Chicago Police detectives working under the Command of Lt. Jon Burge.

Those detectives tortured Mr. Cannon by repeatedly pretending to load a shotgun, placing the

barrel of the gun in Mr. Cannon's mouth and pulling the trigger and by shocking Mr. Cannon

with an electric cattle prod on his genitalia and on his mouth. At the conclusion of this torture,

Mr. Cannon confessed to participating in the murder of Darren Ross. Based on this tortured



EXHIBIT

1

confession – *and no other evidence* – Mr. Cannon was convicted of the murder and sentenced to natural life imprisonment.

2.      When the murder charges were initially filed, the Illinois Prisoner Review Board notified Mr. Cannon that his alleged murder of Darren Ross constituted a violation of the conditions of his parole. No final hearing was ever held on this alleged parole violation, however. Instead, shortly following Mr. Cannon's conviction in the criminal court, the Illinois Prisoner Review Board found Mr. Cannon to be a parole violator without a hearing, based on the fact of his conviction alone.

3.      After decades of litigation, in which Mr. Cannon steadfastly maintained that he was unjustly convicted and a victim of torture, the Cook County State's Attorney's Office, on April 14, 2004, dismissed the criminal case against Mr. Cannon.

4.      Following the dismissal of the criminal charges, Mr. Cannon demanded that the Prisoner Review Board drop its parole hold and release him from custody, pointing out that the basis for the parole hold (*i.e.,* the conviction) no longer existed. The Board refused to release Mr. Cannon and instead convened a parole revocation hearing to determine – for the first time, nearly 21 years after the underlying act – whether Mr. Cannon had violated his parole in October 1983 in connection with the Darren Ross homicide. The Prisoner Review Board conducted the hearing on August 27 (at Stateville Correctional Center in Will County) and September 3, 2004 (in Chicago in Cook County). At the conclusion of that hearing, the Board revoked Mr. Cannon's parole.

5.      This petition seeks review of the Prisoner Review Board's parole revocation decision based on numerous violations of the due process clauses of the United States Constitution and the Illinois Constitution: the Prisoner Review Board failed to provide Mr.

2

Cannon a timely parole revocation hearing; failed to provide Mr. Cannon with notice of the grounds on which it revoked Mr. Cannon's parole; improperly denied Mr. Cannon the right to confront and cross examine witnesses against him; failed to follow Illinois law regarding accountability for the crime of murder; and demonstrated hostile bias against Mr. Cannon. In addition, the PRB's refusal to release Mr. Cannon to parole breaches an agreement that had been reached between Mr. Cannon and the Cook County State's Attorney's Office (acting on behalf of the People of the State of Illinois) that Mr. Cannon would be released from custody in August 2003.

## PARTIES

6.      Plaintiff Darrell Cannon is a resident of the State of Illinois and is currently an inmate of the Illinois Department of Corrections.

7.      Defendant Illinois Prisoner Review Board (the "PRB") is an administrative agency of the State of Illinois charged, among other things, with responsibility for determining whether to revoke the parole of persons paroled on pre-1978 convictions who are alleged to have violated the conditions of their parole.

8.      Defendant Jorge Montes is the Chairman of the Illinois Prisoner Review Board. Defendant Montes presided over Mr. Cannon's August 27 and September 3 parole revocation hearing.

9.      Defendants Andrew Fox and David Frier are members of the Illinois Prisoner Review Board. With defendant Montes, defendants Fox and Frier sat on the hearing panel that found Mr. Cannon to have violated the conditions of his parole.

3

## JURISDICTION AND VENUE

10.     This Court has jurisdiction to review by mandamus and/or by common law certiorari the administrative decision and other actions of the Illinois Prisoner Review Board. Venue is proper in Cook County because part of the transaction out of which this claim arises took part in Cook County.

## ALLEGATIONS OF FACT

I.    **Proceedings in the criminal court and before the PRB leading to the August 27-September 3 parole revocation hearing.**

11.     Mr. Cannon was convicted in 1971 of the murder of one Emanuel Lazar and was given an indeterminate sentence of 100 to 200 years for that conviction. After serving 12 years of the sentence, Mr. Cannon was paroled. As of November 1983, Mr. Cannon was on parole from his 1971 conviction.

12.     On November 2, 1983, Mr. Cannon was arrested by Chicago Police detectives working under the command of Lt. Jon Burge. Following Mr. Cannon's arrest, he was tortured by Area 2 Chicago Police Sergeant John Byrne and Detectives Peter Dignan and Charles Grunhard. Among other things, the three officers took Mr. Cannon to an isolated area on the south side of Chicago, where they terrorized Mr. Cannon by pretending to load a shotgun, placing the gun in his mouth, and pulling the trigger; by lifting Mr. Cannon from the ground by his handcuffed arms and thereby wrenching his arms behind his back; and by shocking Mr. Cannon with an electric cattle prod on his exposed genitalia and on his mouth. Following this torture, Mr. Cannon signed a confession to the October 27, 1983 murder of one Darren Ross and was subsequently charged in the Circuit Court of Cook County with armed violence, murder and conspiracy to commit murder.

13.     On November 18, 1983, shortly after his arrest, Mr. Cannon received a Notice of Violation (attached hereto as Ex. A) stating that he was being charged with violating the conditions of his parole in that he had allegedly "committed the crime of murder."

14.     On December 2, 1983, a PRB hearing officer held a preliminary hearing on this alleged parole violation and concluded that there was probable cause to believe that Mr. Cannon was guilty of the violation. A copy of that preliminary determination is attached as Ex. B.

15.     Despite the finding of probable cause, the PRB never conducted a full parole revocation hearing in Mr. Cannon's case. Instead, the PRB awaited the outcome of the criminal proceedings against Mr. Cannon.

16.     Prior to his criminal trial, Mr. Cannon moved to suppress the statement that had been tortured from him by Area 2 detectives at the time of his November 2 arrest. The motion to suppress was denied. Mr. Cannon's case proceeded to a trial, at which *the only evidence* implicating him in the Darren Ross murder was the tortured confession. At the conclusion of trial, Mr. Cannon was convicted of the murder and, on June 20, 1984, was sentenced to a term of natural life imprisonment.

17.     On August 7, 1984, after Mr. Cannon had been convicted in the criminal court, the PRB (without conducting a hearing) found Mr. Cannon to be a parole violator based solely upon the fact of the conviction and revoked Mr. Cannon's parole. A copy of the August 7, 1984 parole revocation document is attached as Ex. C.

18.     Mr. Cannon's criminal case continued in several proceedings in the Circuit Court of Cook County (including a retrial of the case in 1994, which also resulted in a guilty verdict) and multiple appeals to the Illinois Appellate Court, spanning altogether a period of fourteen years. In 1997, the Appellate Court remanded the case to the Circuit Court for a full evidentiary

5

hearing on Mr. Cannon's motion to suppress, at which, for the first time, Mr. Cannon would be permitted to introduce evidence of the pattern of torture committed by Area 2 and Area 3 detectives working for Burge. (People v. Cannon, 293 Ill. App. 3d 634 (1st Dist. 1997).)

19.     In the middle of that hearing, following the completion of Mr. Cannon's evidence, and before the State was required to present the testimony of the alleged police torturers, the State offered Mr. Cannon a plea bargain whereby he would plead guilty to the offenses of armed violence and conspiracy to commit murder, and would be sentenced to consecutive terms of thirty and ten years. With credit for time served, the intended result of the plea was that Mr. Cannon would be released from custody in August 2003. Mr. Cannon accepted that plea deal on January 19, 2001 and pled guilty to those charges only because he was informed and believed that, as a result of the plea, he would be released in August 2003. At the plea proceeding Mr. Cannon merely stipulated that the factual basis was sufficient to support a conviction, but did not admit guilt. Mr. Cannon continues to assert his innonence.

20.     Notwithstanding the agreement between Mr. Cannon and the Cook County State's Attorney, the PRB asserted that it had authority to continue to hold Mr. Cannon as a parole violator based upon the August 7, 1984 parole revocation document attached hereto as Ex. C. In accordance with that claimed authority, the PRB conducted a parole release hearing for Mr. Cannon on February 20, 2003.

21.     The Cook County State's Attorney routinely objects to releasing Cook County defendants on parole. In Mr. Cannon's case, however, the Cook County State's Attorney wrote a letter explaining the background of Mr. Cannon's guilty plea and specifying that the office did *not* object to Mr. Cannon's release on parole. Mr. Cannon is informed and believes that, in addition to the letter, representatives of the State's Attorney also made oral requests that the PRB

6

release Mr. Cannon so that their agreement with him would be honored. Despite the State's

Attorney's entreaties, the PRB denied Mr. Cannon's request for parole and continued his case for

a subsequent parole release hearing in 2006.

22.     Following the PRB's refusal to adhere to the agreement reached between Mr.

Cannon and the Cook County State's Attorney's Office, Mr. Cannon, on October 22, 2003, filed

a petition for post-conviction relief in the Circuit Court of Cook County alleging (a) that his

counsel had provided ineffective assistance by not warning him of the possibility that,

notwithstanding the agreement, the PRB might continue to hold him as a parole violator and (b)

that the State had breached its agreement that Mr. Cannon would be released in August 2003.

23.     On April 14, 2004, the State filed a response to Mr. Cannon's post conviction

petition acknowledging that Mr. Cannon had been denied the benefit of what he bargained for.

The State interposed no objection to vacating Mr. Cannon's guilty plea and moved to *nolle*

*prosse* all charges against Mr. Cannon. In its written response to the post-conviction petition the

State explained the reason for its action:

> At the time of the plea, the People believed that Cannon would be released
> in August of 2003. After extensive review, the People have determined
> that there is only one option available that honors the intent of the parties at
> the time of the plea. This option is a drastic step to take on Cannon's
> behalf but the People feel obligated to honor the intent of the parties. The
> only option available is to dismiss the substantive case. In doing so the
> People have fulfilled their obligation to honor a "gentlemen's agreement"
> struck in 2001 and have taken the only step that they can to give him the
> benefit of [sic] he bargained for.

Thus, the State's dismissal of the criminal case constituted the strongest possible signal to the

PRB that the agreement the State had reached with Mr. Cannon should be honored. Mr. Cannon

is informed and believes that the State's Attorney took this action only after the PRB had refused

7

additional requests by representatives of the State's Attorney that Mr. Cannon be released on parole so that the agreement between the State and Mr. Cannon would be honored.

24.    On April 26, 2004, Mr. Cannon wrote to the PRB explaining that, since the PRB's parole revocation document (Ex. C) found Mr. Cannon to be a parole violator based solely on the fact of his criminal conviction, the PRB had no further basis to continue to hold Mr. Cannon as a parole violator, now that the criminal case had been dismissed.

25.    The PRB refused to release Mr. Cannon and instead announced that it would hold a parole revocation hearing concerning Mr. Cannon's alleged 1983 parole violation. Mr. Cannon objected, informing the PRB that a parole revocation hearing conducted in 2004 with respect to an alleged violation in 1983 would contravene the due process principle that parole revocation hearings must be conducted in a reasonably timely manner. This objection was overruled and the PRB conducted a parole revocation hearing on August 27, at Stateville Correctional Center, and on September 3, in Chicago.

## II.    The evidence at Mr. Cannon's parole revocation hearing.

26.    Mr. Cannon contended at the parole revocation hearing that, in accordance with the Notice of Violation (Ex. A), the hearing must be limited to the single question of whether Mr. Cannon had participated in the murder of Darren Ross. Accordingly, Mr. Cannon objected to the PRB's consideration of various items of evidence unrelated to the murder charge. Those objections were either overruled or ignored, because, in the words of defendant Montes, the PRB was entitled, notwithstanding the limited Notice of Violation, to weigh generally whether Mr. Cannon was "being good" and/or was "getting [his] act together" at the time of his arrest.

27.    The PRB allowed into the record of the hearing a large amount of material regarding Mr. Cannon's life and background that was completely irrelevant to whether Mr.

Cannon was guilty of the Ross murder. This evidence included, but is not limited to, prison records and a sentencing transcript from 1984. In addition, the PRB relied on evidence tending to show that Mr. Cannon may have been guilty, not of the murder of Darren Ross, but of the separate crime of concealment of a homicide.

28.     As to the Darren Ross murder, the record consisted of four categories of evidence: (a) the confession that was tortured from Mr. Cannon by Chicago Police officers Byrne, Dignan and Grunhard; (b) evidence concerning the torture that led to that confession; (c) the October 31, 1983 grand jury testimony of one Tyrone McChristian and an affidavit recanting that testimony; and (d) Mr. Cannon's own testimony from his 1994 trial and at the revocation hearing regarding his presence at the scene when Ross was murdered by one A.D. McChristian.

29.     At the parole revocation hearing, Mr. Cannon testified that he confessed to involvement in the Ross murder only because he was tortured, as he has consistently asserted over the past twenty years. He testified that Byrne, Dignan and Grunhard tortured him by repeatedly pretending to load a shotgun, placing it in his mouth and pulling the trigger and by shocking Mr. Cannon with an electric cattle prod that they placed on his genitalia and on his mouth. In the tortured confession, Mr. Cannon inculpated himself in planning the Ross murder and supplying the murder weapon to A.D. McChristian.

30.     In contrast, Byrne and Dignan refused to answer questions at the parole revocation hearing concerning their mistreatment of Cannon, asserting their Fifth Amendment right against self-incrimination. (Grunhard, who was also involved, is now deceased.) Former Chicago Police Lt. Jon Burge, who commanded Byrne, Dignan and Grunhard, and Chicago Police Officers Daniel McWeeney and Michael Bosco, who also participated in the investigation of the

Ross murder, also asserted the Fifth Amendment in response to questions concerning the abusive interrogation of Mr. Cannon.

31.    Mr. Cannon presented the testimony of one David Bates and submitted the transcribed testimony of one Gregory Banks concerning their similar torture experiences at Area 2 within days of Mr. Cannon's torture. And, finally, Mr. Cannon introduced the report of Chicago Police Office of Professional Standards investigator Veronica Messenger, which sustained allegations of the torture of Mr. Cannon against Byrne, Dignan and Grunhard.

32.    The grand jury testimony of Tyrone McChristian was consistent with Mr. Cannon's tortured confession in that it asserted that Mr. Cannon had been involved in planning the murder of Darren Ross and had supplied the murder weapon to A. D. McChristian. Tyrone McChristian never testified at either of Mr. Cannon's criminal trials and Mr. Cannon has never had the opportunity to cross examine him.

33.    Tyrone McChristian currently lives in Omaha, Nebraska. Mr. Cannon submitted an affidavit, signed by Tyrone on August 7, 2004, in which he recanted the portions of his grand jury testimony implicating Mr. Cannon and stated that that testimony had been coerced by police who threatened to charge him with the Ross murder unless he implicated Mr. Cannon. Former Chicago Police officers Daniel McWeeney and Peter Dignan asserted their Fifth Amendment privilege when they were asked whether they had participated in coercing false testimony from Tyrone.

34.    Darrell Cannon testified at the parole revocation hearing that he did not participate in the killing of Darren Ross; that he did not supply the murder weapon; and that he had no foreknowledge that the crime would occur. Mr. Cannon stated that Ross was killed in an automobile that Cannon was driving at the request of A.D. McChristian, who was a passenger in

10

the car; that, as they were driving, without warning and without any foreknowledge on Mr.

Cannon's part, A.D. pulled a handgun and repeatedly shot Ross in the head. Mr. Cannon

acknowledged that, numb with shock following the murder and acting on instructions from A.D.,

Mr. Cannon held back the car seat as A.D. removed the body from the car and that he fled the

scene with A.D. Mr. Cannon also admitted that he did not report the offense to the police. This

testimony was consistent with Mr. Cannon's testimony at his 1994 retrial.

### III.    The PRB's decision to revoke parole.

35.    On September 9, 2004, the PRB issued a written decision revoking Mr. Cannon's

parole, a copy of which is attached hereto as Ex. D. That decision concluded: (a) that Tyrone

McChristian's grand jury testimony inculpated Mr. Cannon in the Ross murder and provided a

sufficient basis to revoke parole; (b) that Mr. Cannon's own testimony at the hearing inculpated

Mr. Cannon in the murder and provided a sufficient basis to revoke his parole; and (c) that, in

any event, the PRB did not have to find Mr. Cannon guilty of murder in order to revoke parole

36.    First, the PRB found "good cause" to rely on Tyrone McChristian's grand jury

testimony, even though Mr. Cannon had never had an opportunity to cross examine it, because it

deemed that testimony to be "reliable." The PRB "disregarded" Tyrone McChristian's affidavit

recanting his grand jury testimony. The PRB credited the testimony because the PRB viewed it

as consistent in certain respects with Mr. Cannon's own account of his whereabouts on the day

of the Ross murder and because, in it, Tyrone implicated his brother, A.D.

37.    Second, the PRB found Mr. Cannon's own account of his actions on the day of the

Ross murder to be inculpatory because (a) it chose not to believe Mr. Cannon's assertion that he

did not know that A.D. McChristian possessed a gun prior to the murder and (b) it viewed Mr.

Cannon's concealment of the body and flight from the scene as evidence of guilt of the murder.

11

38.     Third, the PRB concluded, without explanation, that it had the authority to revoke Mr. Cannon's parole on grounds other than murder because "the inmate was given actual notice of other grounds for revoking his parole."

39.     The PRB's decision made no mention of the overwhelming evidence that Mr. Cannon was a victim of torture at the hands of Chicago Police officers. In interviews with the media about the decision, defendant Montes stated that the PRB was "inclined to believe" that Mr. Cannon had been tortured. Despite this "inclination" to believe the evidence of torture, the PRB's decision made no mention of the fact that, without the tortured confession, the State could not have convicted Mr. Cannon of the Ross murder nor of the fact that Mr. Cannon had spent 21 years unjustly imprisoned because of that unlawful evidence.

## COUNT I
### (Mandamus – Denial of Timely Parole Revocation Hearing)

40.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

41.     The PRB has a non-discretionary duty pursuant to the due process clauses of the United States Constitution and the Illinois Constitution to provide persons charged with parole violations with a reasonably prompt parole revocation hearing.

42.     Where, because of the passage of time, it is no longer possible to provide a reasonably prompt parole revocation hearing, the PRB has a non-discretionary duty pursuant to the due process clauses of the United States Constitution and the Illinois Constitution to order the release of a person confined for an alleged parole violation.

43.     Mr. Cannon was charged on November 18, 1983 with violating the conditions of his parole by murdering Darren Ross. The PRB did not conduct a hearing on this alleged violation until August 27 and September 3, 2004 – almost 21 years later.

44.     The PRB could have held a prompt parole revocation hearing in the weeks following its November 18, 1983 charge. Illinois law does not require the PRB to await the outcome of criminal proceedings in parole revocation matters. Rather than conducting a prompt hearing, however, the PRB chose to defer to the criminal process and to base its parole revocation upon Mr. Cannon's criminal conviction.

45.     By conducting Mr. Cannon's parole revocation hearing almost 21 years after the alleged violation (following the dismissal of the criminal case), the defendants violated their duty to afford Mr. Cannon a reasonably prompt parole revocation hearing and thereby deprived Mr. Cannon of due process of law.

## COUNT II
### (Mandamus – Failure to Provide Notice of Parole Violation)

46.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

47.     The PRB has a non-discretionary duty pursuant to the due process clauses of the United States Constitution and the Illinois Constitution to provide persons charged with parole violations with written notice of the claimed violation of parole.

48.     The PRB has a non-discretionary duty, pursuant to the due process clauses of the United States Constitution and the Illinois Constitution, to consider only the particular violation alleged in the written notice in determining whether to revoke parole.

49.     The only written notice of an alleged parole violation ever provided to Mr. Cannon stated that Mr. Cannon was alleged to have committed the crime of murder.

50.     During Mr. Cannon's parole hearing, defendant Montes repeatedly asserted that the PRB was entitled to revoke Mr. Cannon's parole on grounds other than those stated in the notice. The PRB's written decision also asserts that the PRB has this right.

13

51.     In revoking Mr. Cannon's parole, the PRB relied, to Mr. Cannon's prejudice, upon evidence of wrongdoing by Mr. Cannon that is irrelevant to whether Mr. Cannon was guilty of the Ross murder, including (a) assertions contained in a 1984 sentencing transcript, which remained in the record despite Mr. Cannon's objections; (b) Department of Corrections records concerning Mr. Cannon's incarceration, which remained in the record despite Mr. Cannon's objections; and (c) evidence regarding Mr. Cannon's actions *following* the Ross murder, which, under Illinois law, are not sufficient to establish Mr. Cannon's guilt of the murder by accountability.

52.     The defendants violated their duty in Mr. Cannon's parole revocation hearing to limit their parole revocation consideration to the charge alleged in the notice of violation and thereby deprived Mr. Cannon of due process of law.

### COUNT III
### (Mandamus – Denial of Right to Confront and Cross Examine Witnesses)

53.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

54.     The PRB has a non-discretionary duty pursuant to the due process clauses of the United States Constitution and the Illinois Constitution to provide persons charged with parole violations the right to confront and cross examine adverse witnesses unless there is "good cause" to excuse this requirement.

55.     In revoking Mr. Cannon's parole, the PRB relied upon the grand jury testimony of Tyrone McChristian, whom the PRB did not subpoena to the hearing as a witness.

56.     Tyrone McChristian's grand jury testimony was inherently unreliable because: (a) Mr. Cannon at no time has ever had the opportunity to cross examine Tyrone concerning his inculpation of Mr. Cannon in the Ross murder; (b) Tyrone has subsequently recanted the

14

portions of his grand jury testimony that inculpate Mr. Cannon, stating in an affidavit that he had been coerced by the police into implicating Mr. Cannon; and (c) there is no evidence to corroborate the portions of Tyrone's grand jury testimony that inculpate Mr. Cannon. Therefore, the defendants had a non-discretionary duty to afford Mr. Cannon the opportunity to confront and cross examine Tyrone, if they were to rely on his testimony.

57.     The defendants violated their duty in Mr. Cannon's parole revocation hearing to afford Mr. Cannon the opportunity to confront and cross examine the witnesses against him.

**COUNT IV**
**(Mandamus – Failure to Follow Illinois Law on Accountability)**

58.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

59.     In determining whether a person has violated parole by committing the crime of murder, the PRB has a non-discretionary duty to follow the Illinois law defining the crime of murder, including, where applicable, the Illinois law of accountability, as defined by Illinois statute and developed by the Illinois Supreme Court.

60.     Illinois law provides that a person may not be legally accountable for the crime of murder merely by being present at the scene of the crime and that a person may not be legally accountable for a crime based on actions he takes subsequent to the completion of the crime.

61.     The PRB's decision revoking Mr. Cannon's parole departs from clearly established Illinois law by holding Mr. Cannon accountable for the murder of Darren Ross based upon evidence showing no more than that Mr. Cannon was present at the time Ross was murdered by A.D. McChristian.

62.     The PRB's decision revoking Mr. Cannon's parole departs from clearly established Illinois law by holding Mr. Cannon accountable for the murder of Darren Ross based

15

upon evidence of Mr. Cannon's actions following A.D. McChristian's completion of the Ross murder.

63.     The defendants violated their duty in Mr. Cannon's parole revocation hearing to follow Illinois law on accountability for the crime of murder in determining whether to revoke Mr. Cannon's parole for committing the crime of murder.

## COUNT V
### (Administrative Review by Common Law Certiorari)

64.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

65.     This Count V seeks administrative review of the PRB's decision to revoke Mr. Cannon's parole via a writ of common law certiorari.

66.     The statute conferring power on the PRB to conduct parole revocation hearings contains no reference to the Administrative Review Act and provides for no other means of review of parole revocation decisions.  Review of the PRB's parole revocation decisions is therefore available via the writ of common law certiorari.

67.     For the reasons set forth above in Counts I through IV,  the PRB's decision to revoke Mr. Cannon's parole was arbitrary and capricious, an abuse of discretion, contrary to law and against the manifest weight of the evidence and should be reversed by issuance of a writ of common law certiorari.

## COUNT VI
### (Mandamus – Breach of Contract)

68.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

16

69.     The Cook County State's Attorney, on behalf of the People of the State of Illinois,
entered into a contract with Darrell Cannon in January 2001 whereby the State agreed to the
imposition of a sentence in the Darren Ross murder case that would result in Mr. Cannon's
release in August 2003. In exchange for the State's promise, Mr. Cannon agreed to forego the
opportunity to suppress his illegally obtained confession and his defense in the case.

70.     The PRB, as an agency of the State of Illinois, was bound by the contractual
commitment that the Cook County State's Attorney, as an official of the State of Illinois, made
with Mr. Cannon on behalf of the People of the State of Illinois.

71.     The PRB has a non-discretionary duty to honor contractual commitments made on
behalf of the State of Illinois and not to take action constituting a breach of such contracts.

72.     The PRB's refusal, in February 2003, to allow Mr. Cannon to be released on
parole in accordance with the promise the Cook County State's Attorney made to him on behalf
of the People of the State constituted a breach of contract.

73.     In April 2004, the Cook County State's Attorney reaffirmed its contractual
agreement with Mr. Cannon by dismissing all criminal charges against Mr. Cannon arising out of
the Ross murder and explaining the reasons for this action as follows:

> At the time of the plea, the People believed that Cannon would be
> released in August of 2003. After extensive review, the People have
> determined that there is only one option available that honors the intent of
> the parties at the time of the plea. This option is a drastic step to take on
> Cannon's behalf but the People feel obligated to honor the intent of the
> parties. The only option available is to dismiss the substantive case. In
> doing so the People have fulfilled their obligation to honor a
> "gentlemen's agreement" struck in 2001 and have taken the only step that
> they can to give him the benefit of [sic] he bargained for.

74.     By revoking Mr. Cannon's parole in September 2004 and refusing to allow his
release on parole in accordance with the agreement between Mr. Cannon and the State of Illinois,

the PRB again breached the contract that the Cook County State's Attorney had made with Mr. Cannon on behalf of the State.

## COUNT VII
### (Mandamus – Failure to Provide a Neutral Forum for the Parole Revocation Hearing)

75.     Plaintiff Darrell Cannon repeats and re-alleges the preceding paragraphs as if fully set forth herein.

76.     The PRB has a non-discretionary duty pursuant to the due process clauses of the United States Constitution and the Illinois Constitution to provide a neutral and detached forum for considering whether persons are guilty of alleged violations of parole.

77.     The PRB and defendants Montes, Frier and Fox harbor a hostile bias against Mr. Cannon and, on information and belief, had determined prior to the beginning of Mr. Cannon's parole revocation hearing that, under no circumstances, would they allow Mr. Cannon to be released on parole. This bias exists, among other reasons not now known to Mr. Cannon, because Mr. Cannon's November 2, 1983 arrest, within a few months of his having been released on parole, embarrassed the PRB and because the PRB believes Mr. Cannon to be a leader within the El Rukin street gang.

78.     At the hearing, no parole officer or other official "prosecuted" the parole violation case against Mr. Cannon. Instead, the defendants acted as both judge and prosecutor. On information and belief, defendant Montes designated defendant Fox to put forward the case for finding a parole violation. Consistent with this assignment, defendant Fox subjected Mr. Cannon to an aggressive and hostile cross examination at the hearing.

79.     The hostile bias of the PRB against Mr. Cannon is reflected in the following actions taken by the defendants in the course of considering Mr. Cannon's case:

- The defendants refused to honor the clear contractual understanding between the Cook County State's Attorney's Office and Mr. Cannon, whereby Mr. Cannon was to have been released from custody in August 2003, despite numerous oral requests from the State's Attorney that they do so.

- The defendants convened a parole revocation hearing for Mr. Cannon nearly 21 years after the alleged parole violation and after the Cook County State's Attorney had dismissed all criminal charges related to the alleged violation. The PRB has never before taken comparable action in any other case.

- At the hearing, defendant Fox displayed overt hostility toward Mr. Cannon and his counsel, including by engaging in a hostile cross examination of Mr. Cannon that was intended not to discover the truth regarding the Ross murder, but rather to humiliate and/or to inflame Mr. Cannon.

- The defendants refused to acknowledge in their written decision that Mr. Cannon has spent nearly 21 years unjustly imprisoned because of a confession that was procured through police torture, even though defendant Montes admitted to reporters that he and the other defendants were "inclined to believe" that Mr. Cannon is a torture victim.

- The defendants revoked Mr. Cannon's parole in a decision that violates due process and fails to follow Illinois law, as alleged in Counts I through IV above.

80.     The defendants violated their duty in Mr. Cannon's parole revocation case to afford Mr. Cannon a neutral and detached forum for considering whether Mr. Cannon's parole should be revoked.

## PRAYER FOR RELIEF

Mr. Cannon prays that this Court award him the following relief:

A.     Entry of an order directing the Illinois Prisoner Review Board to immediately release him on parole.

B.     In the alternative, entry of an order reversing the Illinois Prisoner Review Board's parole revocation decision and directing the PRB to rehear Mr. Cannon's case, with directions that the PRB strictly follow the requirements of the due process clauses of the United States and Illinois constitutions at the rehearing.

C.     Entry of an order requiring specific performance of the contract that was breached by the defendants, and awarding damages to Mr. Cannon against the defendants jointly and severally for the breach of contract.

D.     Court costs and attorneys fees.

E.   Such further and additional relief as this Court deems just and proper.

Respectfully submitted,

**DARRELL CANNON**

By: _____
One of his attorneys

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 East 60th Street
Chicago, Illinois 60637
(773) 702-0349

G. Flint Taylor, Jr.
People's Law Office
1180 North Milwaukee
Chicago, Illinois 60622
(773) 235-0700

TE OF ILLINOIS · DEPARTMENT OF CORRECT NS

## ADULT PAROLE SERVICES

## NOTICE OF CHARGES

### OF ALLEGED PAROLE OR MANDATORY SUPERVISED RELEASE VIOLATIONS AND PRELIMINARY HEARING

November 18 , 1983

To: Mr. Darrell Cannon     Pontiac     DOC No. C-01592

You are hereby notified that you have been charged with the following alleged violations of the conditions of parole or mandatory supervised release:

That on __November 2, 1983__ you allegedly __committed the crime of Murder__

thereby violating MSR Rule #2, "You must obey all municipal, county, state, and federal laws and ordinances."

That on _____ you allegedly _____

(For further allegations, see reverse side)

You are further notified that a preliminary hearing will be held before a Hearing Officer on

_12-12-_ ~~COOK COUNTY DEPT. OF CORRECTIONS~~ 19 83

at _____
(Place of Hearing)

The Hearing Officer will ascertain whether or not probable cause can be shown that you did commit a parole or release violation. You may appear and speak on your behalf and you may also present letters or documents or have individuals testify in your behalf. Persons having information on the alleged violations may be present to give testimony at this hearing, and you may question them. If you so choose, you may waive the preliminary hearing by signing the waiver provided below.

This is not a parole or mandatory supervised release revocation hearing. The Hearing Officer will summarize and report what transpires at this preliminary hearing and, if probable cause is found, there will be a final parole or mandatory supervised release revocation hearing before the Prisoner Review Board.

Signature: __Curtis A. Miller__ /mm Title: __CPA II__

---

I HAVE RECEIVED A COPY OF THIS NOTICE OF CHARGES

Signature: _Darrell Cannon_     Date: _12-2-83_

---

I WISH TO WAIVE THE PRELIMINARY HEARING

Signature: _____     Date: _____

---

A copy of the foregoing was delivered to the alleged violator

on _12-2-83_     Signature: _Robert Guthrie_

09/09/04  13:17 FAX 524 0012          P.R.B.                              ☒006

Exhibit A

PRELIMINARY PAROLE OR RELEASE VIOLATION HEARING REPORT OF FINDING

In the matter of _Darrell Cannon_ DOC No. _Pont. C -01592_
               (Releasee's Name)

Releasee is accused of violating conditions of Release in the following regard (Specifically set forth in Notice of Charges).

1. _Crime of Murder — Violation of Rule #2_
2. _____
3. _____
               (Use reverse side for more violations, if listed)

Written Notice of Charges having been served on parolee by:

__ROBERT GUTHRIE__ , at __COOK COUNTY JAIL__
   (Person delivering notice)              (Address where served)

On _12-2-83_ , the undersigned __S. L. BURFORD, HEARING OFFICER__
   (Date served)                    (Name and Title)

having been duly appointed a Hearing Officer to conduct preliminary parole violation hearings did hear the above matter at __COOK COUNTY JAIL - DIVISION ~~5~~ 52X__
                                    (Place of hearing)

at the hour of _12:19_ A.M. / P.M. on __DECEMBER__ _19th_, 19 _83_

and this Hearing Officer was not involved in the initial report of violations or recommended revocations.

After hearing is had, the undersigned does find that there is/there is not probable cause that the following conditions of parole have been violated and that the Prisoner Review Board shall conduct/shall not conduct a parole violation hearing on such alleged violations.

_____

_____

_____

The following is a list of the witnesses and documents presented at the hearings:

NOTICE OF CHARGES

ARREST REPORT

RAP SHEET

VIOLATION REPORT

The following is a summary of the evidence presented and the basis of my findings:

_Mr. Cannon does not admit guilt in this offense, stating that he had no part in this offense. The Police are attempting to implicate him in this offense. Mr. Cannon is confident that he will be exhonorated in court. States further that all information police has is circumstantial that can not be proven. Based on _____ police report + indictment probable cause is _Sheila L. Burford_ 12-19-83_
                                         Hearing Officer        (Date)

cc: White:    Board
    Green:    Hearing Officer
    Canary:   Institution
    Pink:     Releasee
    Goldenrod: Parole Office

Name **Darryl Cannon**  No. **C-01592**  Inst. **Joliet**  Okt. No.  **PN**

STATE OF ILLINOIS
PRISONER REVIEW BOARD

Date ~~JULY 15, 1984~~
Aug 7

To the Warden—

The following order is your authority to release this individual on parole to the custody and supervision of the Office of Community Supervision, or continue to hold as indicated. If parole is ordered, said order is subject to being vacated prior to release to parole. Any release is contingent upon execution of Parole or Mandatory Supervised Release Agreement.

☐ Parole granted effective when
    ☐ Parole plans are approved
    ☐ Minimum is served
    ☐ Eligible

☐ Subject to regular conditions and
    ☐ Close Supervision
    ☐ Special Condition No. _____
    ☐ Recommendation No. _____

☐ Parole denied, continued to _____

☐ Hearing continued to _____
    ☐ Psychiatric Report requested
    ☐ For verification of parole plans
    ☐ At inmate's request

☐ Release date offer addended to this Order

---

☒ Declared a violator as of **11-2-83** on

    ☐ Statutory Parole
    ☐ Mandatory Supervised Release
    ☒ Parole

☒ Parole ~~or release~~ revoked

    ☐ Continued to _____

☐ Parole or release continued

    ☐ Effective _____

    ☐ Effective when plans are approved

☐ Found not to be a violator

☐ Hearing continued to _____
    ☐ For further information
    ☐ At inmate's request
    ☐ For Violation Report
    ☐ Recommendation No. _____
    ☐ Special Condition No. _____

---

☐ Order of _____
    ☐ Amended
    ☐ Stayed
    ☐ Vacated

☐ Warrant withheld
☐ Warrant withdrawal request
    ☐ Granted
    ☐ Denied

☐ Statutory Parole

☐ Release by statute

---

☐ Considering all factors of your case, it is the judgment of the Board that parole is warranted.

☐ See Addendum attached to and made a part of this Order

PRB-140-A

White: Board
Canary: Inst. File
Pink: Resident
Goldenrod: Clinical or Parole Services

---

The Board, considering all factors in your case, is denying parole at this time because of one or more of the following statutory reasons:

☐ There is a substantial risk that you will not conform to the reasonable conditions of parole, based upon one or more of the following reasons:

    ☐ Existence of prior adult felony convictions.
    ☐ An apparent pattern of aggressive or assaultive behavior (misdemeanor offenses also considered).
    ☐ Prior adult parole or probation violations within five years prior to offense.
    ☐ Refusal to be supervised on parole.
    ☐ Inadequate parole plan.

☐ Your release would deprecate the seriousness of the offense or promote disrespect for the law, based upon one or more of the following factors:

    ☐ The offense for which you were convicted.

    ☐ The aggravating as well as mitigating circumstance as described by statute.

☐ Your release would have a substantially adverse effect on institutional discipline based upon one or more of the following factors as established by the finding of an Administrative Review Board:

    ☐ Physical attack on another inmate or institutional staff.
    ☐ Possession of weapons or drugs.
    ☐ Repeated violations of major institutional rules.
    ☐ Committed an act prohibited by law.

**Violator Rationale**

Parole or release is violated because you:

☒ Were convicted (or charged with) *Murder*

☐ Violated condition(s) _____
of your Parole or Release Agreement

☐ Violated condition(s) _____
of your Special Order

☐ Absconded

☐ Possessed     ☐ Delivered
    ☐ A controlled substance
    ☐ A weapon

☐ Did not comply with your counselor's instructions to __

☐ Failed to report or falsified report(s)

**Evidence Relied Upon**

☒ Counselor's Report
☒ Police Report
☐ Testimony or reports of witnesses
☐ Own admission

☐ See Addendum attached to and made a part of this Order

For The Board

*[signatures]*
*Franklin*
*A. Taylor*
*T. Wee*

## In Re: Darrell Cannon
## Order and Rationale

### I.    Introduction

On December 1, 1971, Darrell Cannon was sentenced to 100 to 200 years for committing the crime of murder. He was paroled from the Illinois Department of Corrections on January 25, 1983, but in November, 1983 the inmate was arrested and charged with committing a second murder that occurred on or about October 26, 1983. The inmate was served with a Notice of Charges on December 2, 1983, and at a preliminary hearing at the Cook County Jail on December 19, 1983, the hearing officer found probable cause that the prisoner violated his conditions of parole. On August 7, 1984, the Prisoner Review Board (hereafter the "Board") declared the inmate to be a violator of his original parole based on the inmate's conviction for murder. The inmate's convictions were later reversed, but the inmate has remained incarcerated on a Board hold. Negotiations in June, 2004, between the inmate and the Prisoner Review Board resulted in the agreement that a full revocation hearing should be conducted. Today the Board finds that the inmate Cannon has violated his parole by committing the crime of murder.

### II.    Accountability Based on Tyrone McChristian's Testimony

The facts are that on October 26, 1983, A. D. McChristian and Darrell Cannon shot and killed the victim Darrin Ross while they were driving a car in Cook County, Illinois. The Board has analyzed the issue and reached its conclusion primarily on the following two factors. First, the Board relied on the Grand Jury testimony of Tyrone McChristian of October 31, 1983, because it finds there is "good cause" for its admission. In finding "good cause" the Board conducted a balancing test, weighing the interests of the inmate to cross-examine and confront the witness against the public's interest in the reliability of the hearsay evidence and the difficulty of producing the witness. The Board finds there is "good cause" to excuse the live testimony of Tyrone McChristian because it is reliable. Tyrone's statement fits the category of evidence that provides that a hearsay declarant's reasonably detailed statement is to be admitted, especially under circumstances where the parolee has corroborated the details of the statement. The Board disregarded the Affidavit of Tyrone McChristian where he repudiates or recants his prior sworn statement twenty-one years later. It should be noted that Tyrone McChristian grand jury testimony implicated his own testimony, A.D. McChristian. The Board notes that the inmate had the option to subpoena the witness and chose to proceed by way of Affidavit. The Board issued all subpoenae requested by Cannon.

Some, although not all, of the highlights from the statement that enhance its reliability-- making it rise to the level of a firmly rooted hearsay exception--include the comments of animosity between the two McChristian brothers regarding the victim robbing drug dealers, the statement of the inmate that "this date never existed" appears in both Tyrone's and the inmate's testimony, Tyrone had conversations with AD and DC at the pool hall and agreed to take the inmate to 107th and Langley, Tyrone took the inmate to the house, and Tyrone described the exact words the inmate used when the murder was complete. To summarize, the statement contains the corroboration from the inmate and the specificity with the exact date, time, location, and words used to make its admission legally proper in our consideration. The Board finds no credence in the inmate's arguments that the only parts of Tyrone's statement that are not true are those parts that describe retrieving the weapon and passing it off the A.D. McChristian.

When the Board analyzes Tyrone's statement and juxtaposes it with the inmate's sworn testimony from 1984, 1994, and 2004, there is no doubt that the inmate committed the

crime of murder. Tyrone's statement informs us that the inmate and A.D. McChristian were generals in the El Rukns. He informs us that Ross, the victim, had been taking money from someone nicknamed the "robber." He further informs us of the plan to exact revenge on Ross and take control of drug territory. With Tyrone's informed and specific statement the Board sees "General DC" playing an integral and overt role in the crime of murder. The inmate was, at that time, a man intent on carrying out the wishes of his fellow gang member A.D. McChristian. The inmate's overt acts of retrieving the gun, passing the gun off to A.D., and driving the car so that A.D. could shoot the victim, all point to his accountability. Moreover, the circumstances and proximity of the shooting and the cover-up lead to only one conclusion--the inmate is accountable for the murder of the victim. He voluntarily attached himself to the common criminal design and participated at each and every phase of the crime. The inmate and A.D. McChristian shared the intent and the plan, and justice requires that the inmate be held accountable. The Board also notes that caselaw suggests that where gang evidence is properly admitted to show a motive for the crime, evidence that a defendant was a member of a gang or was involved in gang-related activity is admissible to show common design or purpose to offer a motive for an otherwise inexplicable act. People v. Smith, 141 Ill. 2d 40, 58, (1990).

## III.    Acountability Based on Cannon's Testimony

The Board has also analyzed and evaluated the question as to whether the inmate could be held accountable for the crime of murder without the Grand Jury testimony of Tyrone McChristian. Relying solely on the sworn testimony of the inmate, the Board finds that Cannon has violated his parole by committing the offense of murder. The Board summarizes below those facts that establish that the inmate is accountable. The most telling moment in the hearing came when the inmate testified at Stateville Correctional Facility on August 27, 2004, that sometimes he tells the truth, sometimes he is willing to lie. The Board finds that the inmate has manipulated most of the details of the case from its inception. The Board considered his testimony often to be contrived and carefully tailored to meet the needs of the listener and the appellate record.

Based solely on his sworn testimony, on October 26, 1983, Cannon went to the Golden Cue pool hall in Chicago where he met Tyrone McChristian.[1] Tyrone told him that A.D. McChristian wanted to meet him at a girlfriend's house. This is where the common criminal design began. Tyrone drove the inmate to the house where A.D. McChristian and the victim Ross were waiting. The inmate testified that he accompanied A.D. McChristian as "back-up." At the house, the inmate spoke with A.D. The inmate testified that A.D. wanted him to go with him because he was "meeting some people." A.D. "wasn't sure about them" and A.D. "wanted the inmate to watch his back." The Board also considered that the inmate was a general in the El Rukns street gang and was on parole for murder.

At some point, the inmate was driving A.D.'s vehicle, with A.D. in the front passenger seat and the victim sitting directly behind the inmate. While the inmate drove, A.D. and Ross argued about a "robbery" and about the fact that "something was missing." The inmate later admitted that they were arguing about drugs and that A.D. wanted to know the identity of the other two people. While driving the vehicle, A.D. brandished a .32 caliber revolver and shot the victim two times in the head. Several more shots rang out and the victim was killed. At some point during the trip, Cannon or A.D. retrieved a towel from the trunk and wrapped it around the head of the victim so that the blood evidence would not get on the inside of the

[1] We have not included in our review any consideration of the inmate's statement to police taken by Area 2 detectives except those portions that the inmate admitted in motions and trial were true.

2

car. The inmate and A.D. drove around while a plan to dispose of the body emerged. They ultimately decided to dump the body in a prairie behind Altgeld Gardens. As A.D. got out of the vehicle, the inmate held the back seat with his hand and moved it so that A.D. could pull the body out of the vehicle.

The Board is entitled to draw rational inferences based on the facts and circumstances in this case. The Board rejects the inmate's denial that he did not see the gun in such close proximity. Given the location of the front seat and given the fact that there was only an armrest between them, it is a virtual impossibility. The Board does not believe that the inmate did not know that his friend of nineteen years had a gun. The Board dismisses the fact that the inmate did not know the shots were about to be fired, inasmuch as the victim was seated in the vehicle directly behind the inmate. Cannon knew the shooting was about to occur and aided and abetted in the planning and commission of the crime.

The Board rejects those arguments made by counsel that the actions of the inmate subsequent to the crime do not establish his "accountability" for the crime. The Board finds that the actions of the inmate following the shooting, and continuing until his most recent testimony establish his "consciousness of guilt." From these subsequent acts the Board infers Cannon's intent as that of aiding and abetting in the planning and commission of the crime. The inmate was present when the second set of shots was fired. He never disassociated himself from A.D., he maintained a close association with him as they removed the victim's body from the car, he tried to hide the blood evidence, dumped the body, left the scene, failed to notify the police, and continued planning a cover-up of the crime until they returned to see Tyrone and retrieved Cannon's car keys. The inmate was also found hiding naked under some clothes when the police arrived which shows consciousness of guilt. The inmate testified hat he called the police but hung up the phone when he thought they were going to trace the call.

The Board finds that A.D. McChristian and Cannon shared a common criminal design and the same intent. The inmate's participation in the criminal design started with his voluntary attachment to A.D. who was clearly bent on illegal acts, and it continued with his numerous overt acts during and after the crime. It was an intentional and volitional murder carried out by two people who shared the same mindset. The Board has considered the defendant's actions and finds that the inmate's role was active, participatory, and responsible under a theory of accountability.

## IV.   Response to Inmate's Arguments

The Board feels compelled to respond to some, but not all, of the inmate's arguments, although it has addressed some of these above. The Board disagrees with the notion that it is not allowed to consider the inmate's actions after the crime to establish his intent or accountability. The Board directed very specific questions during the revocation hearing regarding the law of accountability as it was presented by counsel for the inmate under People v. Perez, 189 Ill. 2d, 254 (Ill. 2000). Counsel for the inmate argued strenuously that the Board was not entitled to look to the actions of the inmate after the offense occurred. The Board has conducted its own review of the cases on this issue and stands on the arguments raised above. The Board acknowledges that while in isolation any one of the inmate's actions might seem innocuous, but when viewed as a whole, they show the true intent of the inmate.

## V.   Final Note and Conclusion

While the Board did not have to reach this issue, it feels that there is another basis to revoke the inmate's parole. Although the specific charge in the notice states murder, the

Board feels that the inmate was given actual notice of other grounds for revoking his parole (see attached Exhibit A). Although a review of federal and state cases reveal very little law on the issue, it is sufficient to suggest that the notice of charges in a probation or parole revocation setting need not be as specific as the charging instrument in a criminal indictment.

For all the reasons set forth above the Illinois Prisoner Review Board hereby revokes the parole of inmate Darrell Cannon.

_____
Jorge Montes, Chairman

_____
David Frier

_____
Andrew Fox

4

09/09/04  13:17 FAX 524 0012     P.R.B.                                    Ø006

Exhibit A

PRELIMINARY PAROLE OR RELEASE VIOLATION HEARING - REPORT OF FINDING

In the matter of _Darrell Cannon_ DOC No. _Pont. C-01592_
                  (Releasee's Name)

Releasee is accused of violating conditions of Release in the following regard (Specifically set forth in Notice of Charges).

1. _Crime of Murder — Violation of Rule #2_

2. _____

3. _____
                  (Use reverse side for more violations, if listed)

Written Notice of Charges having been served on parolee by:

_ROBERT GUTHRIE_ , at _COOK COUNTY JAIL_
(Person delivering notice)        (Address where served)

On _12-2-83_ , the undersigned _S. L. BURFORD, HEARING OFFICER_
    (Date served)              (Name and Title)

having been duly appointed a Hearing Officer to conduct preliminary parole violation hearings did hear the above matter at _COOK COUNTY JAIL - DIVISION ☒_
                                      (Place of hearing)

at the hour of _12:30_ A.M. / P.M. on _DECEMBER 19th_ , 19 _83_

and this Hearing Officer was not involved in the initial report of violations or recommended revocations.

After hearing is had, the undersigned does find that there is/there is not probable cause that the following conditions of parole have been violated and that the Prisoner Review Board **shall** conduct/shall not conduct a parole violation hearing on such alleged violations.

_____

_____

_____

The following is a list of the witnesses and documents presented at the hearings:

NOTICE OF CHARGES

ARREST REPORT

RAP SHEET

VIOLATION REPORT

The following is a summary of the evidence presented and the basis of my findings:

Mr. Cannon does not admit guilt in this offense, stating
that he had no part in this offense. The Police are
attempting to implicate him in this offense. Mr. Cannon is
confident that he will be exhonorated in Court. States
further that all information police has is circumstantial
that can not be proven. Based on arresting police report
+ indictment probable cause is _Sheila L. Burford_  12-19-83
found.          Hearing Officer          (Date)

cc: White:    Board
    Green:    Hearing Officer
    Canary:   Institution
    Pink:     Releasee
    Goldenrod: Parole Office