## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

*FILED*

MAR -15 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| DENNIS DOWNIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 89 C 2937 |
| | ) | |
| PAUL KLINCAR, et al., | )\ | The Hon. James B. Moran |
| | | |
| Defendants. | ) | |

### DARRELL CANNON'S REPLY IN SUPPORT OF HIS MOTION
### FOR LEAVE TO INTERVENE AND FOR A FINDING OF CONTEMPT

The defendants' central argument in opposition to Darrell Cannon's enforcement of the

consent decree in this case is that Mr. Cannon's litigation in the Circuit Court of Cook County,

*Cannon v. Illinois Prisoner Review Bd., et al.*, No. 04 CH 16620 (hereinafter, the "state court

proceeding") bars him from proceeding in this court. Mr. Cannon strenuously disputes the

contention that the state court proceeding precludes Mr. Cannon from enforcing the consent

decree. But Mr. Cannon does agree with the defendants that it would be appropriate to stay Mr.

Cannon's contempt proceedings in this court pending the outcome of the state proceeding. This

reply memorandum details Mr. Cannon's position.

### PROCEDURAL HISTORY

A few observations concerning the procedural history of Mr. Cannon's parole revocation

hearing and the state court proceeding are necessary for context and to correct inaccuracies in the

defendants' memorandum:

Mr. Cannon's recent parole revocation proceedings before the Illinois Prisoner Review

Board ("PRB") were commenced a few months after the Cook County State's Attorney had

dismissed all pending criminal charges against Mr. Cannon arising out of the homicide of one Darren Ross (which had occurred in October 1983). The parole revocation proceedings were commenced over Mr. Cannon's objection. In an April 26, 2004 letter to then-PRB Chairman Craig Findley (copy attached as Ex. A), Mr. Cannon demanded immediate release from custody, explaining that, with the dismissal of the criminal charges, the PRB and the Illinois Department of Corrections had no further grounds to continue to hold him. The PRB refused this demand and convened a parole revocation hearing to determine – more than two decades after the fact – whether Mr. Cannon violated his parole (Mr. Cannon was on parole for a prior offense in October 1983) by committing the murder of Darren Ross. Mr. Cannon's counsel did participate and present evidence during the parole revocation hearing, but they had already made clear their position that the PRB had no right to convene the hearing in the first place.

After the PRB revoked Mr. Cannon's parole, Mr. Cannon filed the state court proceeding. The complaint in that proceeding, which is attached to the defendants' memorandum, raises a number of due process claims relating to the PRB's decision to convene the parole revocation hearing and to the manner in which it was conducted. One of those claims (there are seven counts total in the complaint) is that the PRB violated procedural due process by taking into account the since-recanted grand jury testimony of one Tyrone McChristian, who did not testify in either of Mr. Cannon's criminal trials and whom Mr. Cannon had never been able to confront and cross examine. *See* Ex. 1 to the Defendants' Memo, Count III. The remaining claims in the state court proceeding do not touch on the matters covered in this court's consent decree.

The defendants have moved to dismiss the state court proceeding. Among other things, their motion to dismiss argues that this court's decree bars *the Circuit Court* from considering Mr. Cannon's claims. *See* Defendants' Combined Motion to Dismiss at 7-8 (attached as Ex. B).

That argument, at best, is inconsistent with the position those same defendants take here – that the pendency of the state court proceedings bars *this Court* from hearing Mr. Cannon's petition for a rule to show cause.

## ARGUMENT

There is no basis for the defendants' argument that Mr. Cannon lacks standing to enforce this court's consent decree. The consent decree, as the defendants acknowledge in their motion to dismiss in the state court proceeding, was entered in order to govern the manner in which the PRB would conduct all future parole revocation hearings. *See* Ex. B at 7. Mr. Cannon, who was subjected to a parole revocation hearing on August 27 and September 2, 2004, is unquestionably an intended beneficiary of the procedural protections afforded by that decree to all alleged parole violators.

The defendants are correct that there is language in the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) suggesting that beneficiaries of a consent decree may not be entitled to enforce the decree. But as the defendants also recognize, most circuits, including the Seventh Circuit, nevertheless allow enforcement of consent decrees by third party beneficiaries under certain circumstances pursuant to Rule 71 of the Federal Rules of Civil Procedure. *See, e.g., South v. Rowe*, 759 F.2d 610, 612 n. 1 (7th Cir. 1985) (holding that Rule 71 bolstered the conclusion that an intended third-party beneficiary of a consent decree could intervene pursuant to Rule 24(a)(2) to enforce that decree); *Floyd v. Ortiz*, 300 F.3d 1223, 1227 (10th Cir. 2002) (Petitioner "is entitled, as a present inmate for whose benefit the Agreement was entered, to seek enforcement of its terms."); *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977) (noting Rule 71 intended to provide for process to enforce court orders by persons properly affected by them, "even if they are not parties to the action"); *Berger v.*

3

*Heckler*, 771 F.2d 1556, 1565-66 (2d Cir. 1985) ("Under Rule 71, a non-party who establishes

standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may

pursue enforcement of that agreement or decree."); *Washington Hosp. v. White*, 889 F.2d 1294,

1299 (3d Cir. 1989); *Hook v. Arizona Dep't of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992)

("intended third party beneficiaries of a consent decree have standing to enforce the decree").

The defendants' argument that Mr. Cannon is not an intended beneficiary of this court's

consent decree is baseless. It cannot be doubted that this court entered the consent decree in

order to afford procedural protections to persons, like Mr. Cannon, whose parole revocation

cases might subsequently come before the PRB and who might seek to confront and cross

examine the witnesses against them. As the defendants acknowledge, the consent decree makes

unambiguously clear that its purpose is to impose procedural requirements on all subsequent

parole revocation hearings – including Mr. Cannon's.

This case is indistinguishable from *South v. Rowe*, 752 F.2d at 613, in which the Seventh

Circuit (analyzing the question under the permissive intervention standard of Rule 24(a)(2))

found that a current prison inmate had standing to intervene in order to enforce a consent decree

regarding the prison library, which had been negotiated by a former inmate. Like the intervener

in *Rowe*, Mr. Cannon seeks to enforce an agreement that was negotiated for his benefit by a

former alleged parole violator. *See also Gautreaux v. Pierce*, 548 F. Supp. 1284, 1287 (N.D. Ill.

1982), *aff'd*, 707 F.2d 265 (7th Cir. 1983).

Indeed, like the intervener in *Rowe*, Mr. Cannon satisfies each of the Rule 24(a)(2)

requirements for intervention of right. Mr. Cannon claims an interest – the right to confront and

cross examine the witnesses against him at his parole revocation hearing – which is the subject of

this case and the disposition of this case may as a practical matter impair or impede his ability to protect that interest.

It is also clear (and undisputed) that Mr. Cannon's intervention petition is timely, since it was filed on January 10, 2005, within a few months of the defendants' violation of the decree.[1] *See generally United States v. Kemper Money Market Fund, Inc.*, 704 F.2d 389, 391 (7th Cir. 1983). Finally, it cannot be seriously questioned that Mr. Cannon's interests are not adequately represented by existing parties. As in *Rowe*, the original plaintiff in this case is long gone and there is no other person before this court with the ability and the interest to advocate for Mr. Cannon's interests.[2] Therefore, there can be no serious question but that Mr. Cannon should be permitted to intervene to enforce the consent decree.

Mr. Cannon does, however, agree with the defendants that it would be appropriate to stay any disposition of his contempt petition until there has been a resolution of all of the issues in the state proceeding. If Mr. Cannon were to obtain the relief he seeks in the state proceeding, there would be no need to involve this federal court. Since the state proceeding encompasses a wider range of issues – as well as certain questions that are purely matters of state law – Mr. Cannon believes that the interests of comity, as well as judicial efficiency, would be served by allowing the state proceeding to move forward first. Mr. Cannon has no objection to an indefinite stay of this petition pending the outcome of the state proceeding.

---

[1] It was precisely this consideration – timeliness of intervention – that led Mr. Cannon to file his petition at this time, rather than awaiting the outcome of the state court proceedings.

[2] The defendants' argument that Mr. Cannon's state proceedings will "adequately represent" his interests (Def. Memo at 5) is a *non sequitur* that simply misreads Rule 24(a)(2). The issue is whether "*existing parties*" in *this* litigation will adequately represent Mr. Cannon's interest. Obviously, as in the *Rowe* case, they will not.

## CONCLUSION

For the foregoing reasons, this court should enter an order granting Mr. Cannon leave to intervene in this case and staying further action on his contempt petition until there has been a final disposition of the state proceeding.

Respectfully submitted,

**DARRELL CANNON**

By: _____
One of his attorneys

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 East 60th Street
Chicago, Illinois 60637
(773) 702-0349

G. Flint Taylor, Jr.
People's Law Office
1180 North Milwaukee
Chicago, Illinois 60622
(773) 235-0700

Charles W. Hoffman
Assistant Defender
Office of the State Appellate Defender
600 West Jackson Blvd.
6th Floor
Chicago, IL 60661
(312) 814-5100

Leah Epstein, a third year student at the University of Chicago
Law School, also assisted in the preparation of this document.

6

# Exhibit A

The
# MacArthur
## Justice
#### Center

University of Chicago
Law School
1111 East 60th Street
Chicago, Illinois 60637

*phone* 773.753.4405
*fax* 773.702.0771

*Legal Director*
**Locke E. Bowman**
773.702.0349
locke_bowman@law.uchicago.edu

*Visiting Lecturer & Trial Attorney*
**Joseph Margulies**
773.702.9560
jmarguli@law.uchicago.edu

April 26, 2004

*Of Counsel*
**Jean Maclean Snyder**
773.285.5100
snyder@uchicago.edu

*Board of Directors*
**Solange MacArthur**
**John R. MacArthur**
**James Liggett**

The Honorable Craig Findley
Acting Chairperson
Illinois Prisoner Review Board
319 E. Madison Street, Suite A
Springfield, Illinois 62701

> Re: Darrell Cannon
> Inmate No. C-01592

Dear Mr. Findley:

We are counsel for Darrell Cannon and we are writing to you this time, pursuant to your request in our conversation of April 19, to formally advise you and the other members of the Prisoner Review Board ("PRB") of recent developments in Mr. Cannon's situation that require his immediate release from custody.

As you know, on April 14, 2004, Mr. Cannon's conviction in the case of *People v. Cannon*, 92 CR 28009 (Circuit Court of Cook County) was vacated and, upon motion of the Cook County State's Attorney, the charges against Mr. Cannon were dismissed. We have attached as Ex. A to this letter a certified statement of disposition, showing the State's *nolle prosequi* of the charges against Mr. Cannon.

Mr. Cannon has been held – and currently remains – in the Department of Corrections as a parole violator based upon a finding, dated August 7, 1984 (and attached as Ex. B to this letter), that Mr. Cannon had been convicted of murder in the now-dismissed case described in the prior paragraph. Since Mr. Cannon no longer stands convicted of that murder and since the State has made clear it does not intend to further prosecute those charges, there is now no basis upon which to continue to hold Mr. Cannon. He must be immediately released.

*General Counsel*
**David J. Bradford**
One IBM Plaza
Suite 4400
Chicago, IL 60611
312.222.9350
djbradford@jenner.com

The Honorable Craig Findley
April 26, 2004
Page No. 2

For the benefit of the members of the PRB, we provide below a detailed summary of Mr. Cannon's parole status and a brief explanation of the law that requires Mr. Cannon's release at this time.

## HISTORY OF MR. CANNON'S PAROLE STATUS

In 1971, Mr. Cannon was convicted in the Circuit Court of Cook County of the murder of Emanuel Lazar and was sentenced to an indeterminate term of 100 to 200 years in the Illinois Department of Corrections. The PRB paroled Mr. Cannon after he had served 12 years for that conviction.

On November 2, 1983, while he was on parole from the 1971 conviction, Mr. Cannon was arrested by the Chicago Police and charged with the murder of one Darren Ross. That arrest prompted the PRB to commence parole revocation proceedings. The PRB's "Notice of Charges of Alleged Parole Violations" (dated November 18, 1983; Ex. C hereto) informed Mr. Cannon that he had allegedly committed the crime of murder, and thus had violated the parole condition that he obey all state laws.

On December 19, 1983, this Board conducted a preliminary parole violation hearing at the Pontiac Correctional Center. The only evidence submitted against Mr. Cannon was PRB's own Notice of Charges, the Chicago Police arrest report, Mr. Cannon's criminal history and a PRB parole violation report. Mr. Cannon denied guilt of the offense. According to the notes of the Hearing Examiner, Mr. Cannon stated that he was "confident that he will be exonerated in court." The hearing examiner found probable cause that Mr. Cannon was a parole violator and indicated that a parole violation hearing would be conducted. *See* 12/19/83 Preliminary Parole Violation Hearing, Report of Finding; attached as Ex. D.

There is no record of a parole violation hearing ever being held. Instead, on August 7, 1984, two weeks following Mr. Cannon's conviction in the Circuit Court for the Darren Ross murder, the PRB summarily revoked parole. The parole revocation document (Ex. B hereto) makes clear that the *sole* basis for revocation was because Cannon had been *convicted* of murder.

Mr. Cannon's conviction in the 1983 case was the subject of appellate litigation over many years, drawing wide attention because Mr. Cannon credibly claimed that his confession to the Ross murder (on the day of his November 1983 arrest) was the result of torture perpetrated by Chicago Police detectives associated with Jon Burge – a notorious former Chicago Police Commander who was fired after a finding that he had tortured a Chicago citizen at the Area 2 police headquarters. A Special Prosecutor was

The Honorable Craig Findley
April 26, 2004
Page No. 3

recently appointed by the presiding criminal courts judge in Cook County to
investigate claims of torture committed by Burge and Area 2 detectives
operating under his command, *including the detectives who tortured Mr.
Cannon.*

In 1997, the Illinois Appellate Court vacated Mr. Cannon's conviction
and sentence and instructed the Circuit Court to conduct a suppression
hearing at which Mr. Cannon would have the opportunity to present evidence
of the widespread practice of torture at Chicago's Area 2 police headquarters.
*See People v. Cannon,* 293 Ill. App. 3d 634 (1st Dist. 1997).

In January 2001, while the suppression hearing was in progress, the
State's Attorney's office offered Mr. Cannon a plea agreement whereby he
would plead guilty to conspiracy to commit the Ross murder and be
sentenced to consecutive terms of 30 and 10 years for armed violence and
conspiracy to commit murder.[1]  With credit for time served, Mr. Cannon
would complete the sentence in August 2003.  However, as a result of the
plea, Mr. Cannon remained convicted of the Ross murder.  Thus, pursuant to
the August 7, 1984 parole revocation finding, Mr. Cannon remained a parole
violator in the 1971 case.

It was the understanding of all parties and the judge that Mr.
Cannon's plea ensured that he would be released from custody in August
2003.  At the time of the plea, the necessity for a parole release hearing
before the PRB was not anticipated.

On February 20, 2003, the PRB conducted a parole release hearing for
Mr. Cannon at the Tamms Correctional Center.  Prior to that hearing, the
PRB was informed of the mistaken belief of all counsel that the plea
agreement would lead to Mr. Cannon's release in August 2003.  In a letter
directed to one of Mr. Cannon's attorneys (and subsequently provided to the
PRB), Assistant State's Attorney David Kelley acknowledged that "[I]t was
anticipated by the parties that Mr. Cannon would likely be released from the
Illinois Department of Corrections in July or August 2003."  In that letter,
Mr. Kelley also made clear that the Cook County State's Attorney had "no
current objection to parole being granted to Mr. Cannon in the summer of
2003."  *See* David Kelley letter of 2/13/03; Ex. E hereto.

---

[1]  This plea, which effectively reduced Mr. Cannon's life sentence to time served, plus two
and a half years, was offered after Mr. Cannon put on his torture evidence.  Mr. Cannon
reluctantly accepted the plea deal, despite his firm and ongoing contention that he is an
innocent torture victim, because, under the plea, Mr. Cannon expected to be released from
custody long before he could reasonably anticipate that he would (a) prevail on the
suppression motion; (b) prevail on any appeal by the State from a pre-trial ruling favorable to
him; and (c) obtain a not-guilty verdict following trial.

The Honorable Craig Findley
April 26, 2004
Page No. 4

On February 27, 2003, however, the PRB issued a decision denying Mr. Cannon's request to be released on parole, continuing his case for a further parole release hearing in February 2006.

Following this development, the MacArthur Justice Center filed a Petition for Relief under the Post-Conviction Hearing Act in the Circuit Court of Cook County alleging ineffective assistance of counsel and a violation of due process based on the misinformation provided to Mr. Cannon at the time of his guilty plea.[2]

On April 14, 2004, the Cook County State's Attorney's Office filed a response to the Post-Conviction Petition (attached as Ex. F) in which the State's Attorney acknowledged that Mr. Cannon's Petition properly alleged ineffective assistance of counsel and requested that aspect of the petition be allowed and that Mr. Cannon's plea be vacated. The Cook County State's Attorney's Office took the further step of announcing in its response that it would *nolle prosse* the charges pending against Mr. Cannon in the 1983 case because dismissal of the case is the "one option available that honors the understanding of the parties at the time of the plea." By dismissing the case – eliminating the predicate of Mr. Cannon's parole revocation – and thereby creating a situation that *requires that Mr. Cannon be released from custody*, the State sought to fulfill its obligation to "honor a 'gentlemen's agreement'" and to give Mr. Cannon the benefit of the bargain he made in January 2001, that is, release from custody.[3]

Immediately following the State's Attorney's submission, the Circuit Court of Cook County entered an order vacating Mr. Cannon's plea of guilty and allowing the State's Attorney's motion to *nolle prosse* the case. *See* Ex. A.

---

[2] Charles Hoffman, who is an assistant in the Office of the State Appellate Defender, did not participate in the post conviction proceedings because of the possibility that that Office would resume its representation of Mr. Cannon in potential future appellate proceedings. Now that the criminal proceedings have been definitively concluded, Mr. Hoffman joins with MacArthur Justice Center counsel in requesting relief on behalf of Mr. Cannon at this time.

[3] The State's response also contains a number of gratuitous, false and irrelevant assertions regarding Mr. Cannon's guilt of the murder of Darren Ross. Mr. Cannon takes the strongest possible exception to those assertions and states, as he always has, that he is innocent of that offense, and that the State's Attorney's Office has *nolled* his case because it recognizes that the evidence presented at his suppression hearing establishes him as an innocent torture victim. But, notwithstanding Mr. Cannon's guilt or innocence in the Darren Ross murder, what is clear for present purposes is that the basis for Mr. Cannon's parole revocation has been eliminated – as the State surely understood when it dismissed the charges.

The Honorable Craig Findley
April 26, 2004
Page No. 5

## THE DISMISSAL OF CHARGES REQUIRES THAT
## MR. CANNON BE IMMEDIATELY RELEASED FROM CUSTODY

The developments in this case on April 14, 2004 fundamentally and irrevocably altered Mr. Cannon's parole status.

The PRB's August 7, 1984 parole revocation document clearly provides that Mr. Cannon was declared a parole violator *solely* on the basis that he had been *convicted* of the Ross murder. On April 14, that conviction was vacated and the State made clear that it will not further prosecute Mr. Cannon for the murder. Since the only basis on which Mr. Cannon's parole was originally revoked has now been eliminated, he is no longer a parole violator and he must be immediately released from custody and returned to his status as a parolee.

At the time the PRB considered Mr. Cannon for parole revocation, it could, of course, have held a full hearing, at which Mr. Cannon would have had a full panoply of due process rights, including, among other things, the right to notice of the charges; the right to subpoena and call his witnesses; and the right to confront the witnesses against him. *See generally Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (setting forth the due process requirements for a parole hearing); 730 ILCS 5/3-3-9 (parole revocation procedures under Illinois law). The PRB elected not to conduct such a hearing, instead revoking Mr. Cannon's parole solely on the basis of the conviction in the Circuit Court of Cook County. Had such a hearing been held, Mr. Cannon, of course, would have presented evidence demonstrating that his confession to the Ross murder – the primary evidence against him – was the result of Area 2 torture.

Mr. Cannon's parole status, thus, turns entirely on his status as a convicted offender. Mr. Cannon no longer stands convicted. Therefore, he is no longer a parole violator. He must be released from custody without delay. The issue at this time is no longer (as it was at the time of the PRB's February 2003 parole release hearing) whether it would be *appropriate* to release Mr. Cannon from confinement. Instead, the present circumstances dictate that Mr. Cannon *may no longer be held* as a parole violator. With the elimination of the conviction, any further confinement of Mr. Cannon is unlawful.[4]

---

[4]  The PRB, quite obviously, could not today conduct the full parole revocation hearing (to decide whether, apart from the fact of conviction, there is *evidence* that Mr. Cannon violated the law by murdering Darron Ross). An alleged parole violator is entitled to a reasonably prompt parole revocation hearing. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471 (1972); *U.S. ex rel. Sims v. Sielaff*, 563 F.2d 821 (7th Cir. 1977). Today, more than 20 years after the fact, is far too late for such a hearing to occur.

The Honorable Craig Findley
April 26, 2004
Page No. 6

The Supreme Court has clearly held that it is illegal to hold a paroled person in prison without lawful authority. *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 486 (1973). A prisoner who is being held as a purported parole violator, but without a lawful basis for doing so, "is being unlawfully subjected to physical restraint" in violation of basic principles of due process. *Ibid.* This is precisely Mr. Cannon's current situation. We therefore request that the PRB forthwith direct the Illinois Department of Corrections to release him from his unlawful confinement.

As of the writing of this letter, Mr. Cannon has been held in the Illinois Department of Corrections for twelve days without lawful authority. Obviously, we consider this to be a matter of extreme concern and extreme urgency. We therefore appreciate your agreement to expedite the PRB's consideration of the matters raised in this letter. Please inform us of the PRB's decision at the earliest possible time.

Thank you for your courtesy and for your cooperation.

Respectfully yours,


Locke E. Bowman                           Charles W. Hoffman

# Exhibit B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

DARRELL CANNON,                          )
                                         )
            Plaintiff,           )
                                         )
       vs.                          )    No. 04 CH 16620
                                         )
ILLINOIS PRISONER REVIEW                 )
BOARD, *et al.*,                         )
                                         )
            Defendants.          )
                                         )

### NOTICE OF FILING

TO:    Locke E. Bowman, Esq.
        MacArthur Justice Center
        University of Chicago Law School
        1111 East 60th Street
        Chicago, Illinois 60637

      **PLEASE TAKE NOTICE** that on December 6, 2004, the attached **DEFENDANTS' COMBINED MOTION TO DISMISS PURSUANT TO SECTION 2-619.1 OF THE ILLINOIS CODE OF CIVIL PROCEDURE,** was filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, at the Richard J. Daley Center, Chicago, Illinois 60602.

                               Respectfully submitted,

LISA MADIGAN, #99000    By
Attorney General of Illinois                RONALD ANTHONY RASCIA
                                   Assistant Attorney General
                                   Office of the Attorney General
                                   100 W. Randolph St., 13th Flr.
                                   Chicago, Illinois 60601
                                   (312) 814-3647

### CERTIFICATE OF SERVICE

      The undersigned attorney certifies that a copy of the foregoing was served upon the above named individual at the above address by U.S. mail, postage prepaid, on the 6th day of December, 2004.

04CH16620MTDnof.wpd\DS.ad

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

DARRELL CANNON, )
)
        Plaintiff, )
)
        vs. )    Case No.  04 CH 16620
)
ILLINOIS PRISONER REVIEW BOARD, )
JORGE MONTES, Chairman of the )
ILLINOIS PRISONER REVIEW BOARD, )
DAVID FRIER, Member of the Illinois )
Prisoner Review Board, and ANDREW FOX, )
Member of the Illinois Prisoner Review )
Board, )
)
        Defendants. )

## DEFENDANTS' COMBINED MOTION TO DISMISS PURSUANT
## TO SECTION 2-619.1 OF THE ILLINOIS CODE OF CIVIL PROCEDURE

NOW COME the Defendants, the ILLINOIS PRISONER REVIEW BOARD, JORGE

MONTES, Chairman, DAVID FRIER, member and ANDREW FOX, member, by and through

their attorney LISA MADIGAN, Attorney General of Illinois and move this Honorable Court for

an Order dismissing said cause of action pursuant to 735 ILCS 5/2-619 and 735 ILCS 5/2-615,

and in accordance with 735 ILCS 5/2-619.1 (West 2002). In support whereof, movants state as

follows:

## I.    INTRODUCTION

Plaintiff has filed a petition for *writ of certiorari* and mandamus to have this Court

overrule and reverse the finding of revocation of parole by the Prisoner Review Board. Plaintiff

has named the ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, Chairman DAVID

FRIER and ANDREW FOX, members of the Illinois Prisoner Review Board as Defendants, and

is requesting immediate release from custody, monetary damages (including attorneys fees and

1

costs) and specific performance of an alleged agreement between the Cook County State's Attorney and Darrell Cannon.

## II.   SECTION 2-619 OF THE ILLINOIS CODE OF CIVIL PROCEDURE

A § 2-619 motion to dismiss affords a means of obtaining a summary disposition of issues of law or of easily proved issues of fact. Kedzie and 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 115, 619 N.E. 2d 732, 735 (1993). To achieve this end, a § 2-619 motion raises defects or defenses which negate the cause of action completely or refute conclusions of law or material fact that are unsupported by allegations of specific fact. Spillyards v. Abboud, et al., 278 Ill. App. 3d 663, 668, 662 N.E. 2d 1358, 1361 (1st Dist. 1996). When raising such defects or defenses, a § 2-619 motion to dismiss admits all well-pleaded facts together with all reasonable inferences that can be gleaned from those facts, however, a § 2-619 motion to dismiss does not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact upon which those conclusions rest. Id.

In this matter, 2-619(a)(1) provides for dismissal where the court does not have subject matter jurisdiction over the action, and subsection (a)(9) provides for dismissal where the claim asserted is "barred by other affirmative matter avoiding the legal effect of or defeating a claim." 735 ILCS 5/2-619(a)(1) and (9) (West 2002). Section 2-619 empowers this Court to dismiss the Complaint at hand for the following reasons: (1) this Court lacks subject matter jurisdiction as Defendants, the ILLINOIS PRISONER REVIEW BOARD and JORGE MONTES, DAVID FRIER and ANDREW FOX, are entitled to sovereign immunity; (2) this Court may not reverse a decision of the Prisoner Review Board on the merits; (3) Plaintiff's claim for relief is not supported by certiorari or mandamus nor does he plead a proper claim for specific performance;

2

and (4) the Downie Consent Decree controls the procedural manner in which all parole revocation hearings must be conducted.

A.   **PLAINTIFF'S ACTION AGAINST THE ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, DAVID FRIER AND ANDREW FOX, ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY**

The Circuit Court of the Cook County, does not have subject matter jurisdiction over the Plaintiff's action against Defendants, the ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, DAVID FRIER and ANDREW FOX, on the basis of sovereign immunity. Sovereign immunity exists in Illinois by statute[1] and mandates that the State or a department of the State cannot be a defendant in an action brought directly in the circuit court. *President Lincoln Hotel Venture, et al. v. Bank One et al.*, 271 Ill. App. 3d 1048, 1054, 649 N.E. 2d 432, 437 (1st Dist. 1994). Except where the State has expressly consented to be sued or where suit is brought under the Court of Claims Act, the doctrine of sovereign immunity applies and "the State of Illinois shall not be made a defendant or party in any court." *Management Assoc. of Ill., Inc. v. Bd. of Regents of N. Ill. Univ., et al.*, 248 Ill. App. 3d 599, 606, 618 N.E. 2d 694, 699 (1st Dist. 1993).

The Court of Claims Act provides, in part, that the Court of Claims shall have exclusive jurisdiction to hear all claims against the State founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, and all claims against the State for damages in cases sounding in tort. 705 ILCS 505/8(a) and (d) (West 2002). Here, Plaintiff alleges due process violations against Defendants, the ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, DAVID FRIER and ANDREW FOX, and

---

[1]   The General Assembly provided for legislative sovereign immunity in the State Lawsuit Immunity Act and referred to the Court of Claims Act. 745 ILCS 5/1 (West 2002).

claim that each is liable for wrongful incarceration. Because the Plaintiff's claims against Defendants, sound in tort and are founded upon a law of the State of Illinois, the Court of Claims has exclusive jurisdiction to hear these claims.

When a private litigant wishes to assert rights or obligations against the State of Illinois, those rights must be pursued in the Court of Claims. *S.J. Groves & Sons Co. v. State*, 93 Ill. 2d 397, 405, 407, 444 N.E. 2d 131, 135, 137 (1982). Whether an action is in fact one against the State, and therefore one that must be brought in the Court of Claims, depends not on the formal identification of the parties, but rather on the issues involved and the relief sought. *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992); *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990). Additionally, a litigant cannot evade the prohibition against making the State of Illinois a party to a suit by naming a servant or agent of the State in the action when the real claim is against the State itself. *President Lincoln Hotel Venture*, 271 Ill. App. 3d at 1054, 649 N.E. 2d at 437. Clearly, a suit against a department of the State is a suit against the State. *Gordon v. Dept. of Transp.*, 109 Ill. App. 3d at 1074, 441 N.E. 2d at 906-07.

The purpose of sovereign immunity is to protect the State against interference in the performance of its governmental functions and to preserve its control over the State coffers. *President Lincoln Hotel Venture*, 271 Ill. App. 3d at 1055, 649 N.E. 2d at 437 (*citing Groves*, 93 Ill. 2d at 401, 444 N.E. 2d at 133). If a judgment for a plaintiff could operate to control the actions of the State and/or subject the State to liability, then the action is deemed against the State, and is therefore barred by the doctrine of sovereign immunity. *President Lincoln Hotel Venture*, 271 Ill. App. 3d at 1054-55, 649 N.E. 2d at 437; *see also, Currie v. Lao*, 148 Ill.2d at 158, 592 N.E.2d at 980; *Ellis v. Bd. of Governors*, 102 Ill. 2d 387, 395, 466 N.E. 2d 202, 207 (1984).

4

In the case at hand, the Plaintiff named the ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, DAVID FRIER and ANDREW FOX, as Defendants in his Complaint, the Plaintiff's claims sound in tort and are founded upon a law of the State of Illinois. As such, the Court of Claims has exclusive jurisdiction to hear these claims. The ILLINOIS PRISONER REVIEW BOARD is a department of the State of Illinois, and its members are agents of the State of Illinois, and therefore a suit against these Defendants is a suit against the State of Illinois. The Plaintiff's request for a judgment against the ILLINOIS PRISONER REVIEW BOARD and its members clearly threatens to control the actions of the State and to subject the State to liability in contravention of the sovereign immunity doctrine. Accordingly, the Plaintiff's Complaint against the ILLINOIS PRISONER REVIEW BOARD and its members must be dismissed with prejudice under the doctrine of sovereign immunity.

## B.   THIS COURT MAY NOT REVERSE A DECISION OF THE PRISONER REVIEW BOARD ON THE MERITS

It is beyond the authority of this Court to reverse the decision of the Prisoner Review Board of the merits. *Hanrahan v. William*, 174 Ill.2d 268, 673 N.E. 2d 251, 220 Ill. Dec. 339 (1996). The Illinois Supreme Court found that the *writ of certiorari* was a general method for seeking Circuit Court review in administrative action when the agency does not expressly adopt the administrative review law and provide no other form of review *Hanrahan*, at 272. The Supreme Court found in *Hanrahan* that a *writ of certiorari* may not be used to review merits of the board's parole release decision. (*Hanrahan*, 174 Ill.2d at 281, 220 Ill. Dec. 339, 673 N.E. 2d at 257). The court reasoned, in part, that the legislature intended the Board to have "complete discretion and complete determining whether when to grant parole or when to deny parole is not mandated by statute. Its pronouncement in the *Hanrahan* case, the Illinois Supreme Court

5

appears to leave the matter of parole decisions to the Board and that this Court is without authority to overrule or second guess the Board's decision. Illinois courts have consistently have that parole is not a right. *People v. Hawkins*, 54 Ill.2d 247, 252, 296 N.E. 2d 725 (1973).

In *Hanrahan*, the Supreme Court concluded that the legislature in drafting this statutory language, intended the Prisoner Review Board to have complete discretion in whether to grant parole or deny parole. The Court also identified the parole board's decision making as significantly different from other agencies given the highly subjective and particular nature of the parole relief decision and is said that there are no standards sufficiently objective to allow the Court to evaluate the Board's decision to deny parole other than the statutory criteria mandating denial. *Hanrahan* at 279. At best, the Court can review the proceedings for compliance with due process. That examination is subject to the *Downie* decree.

Plaintiff claims in his complaint that he was given a hearing by the PRB on August 27, 2004 and September 3, 2004. He does not allege that the PRB did not provide him with appropriate notice, or issue a written opinion. He further admits that he gave testimony to the Board, and in the Board's Order and Rationale, attached to Plaintiff's complaint as Exhibit D, It is clear from the four page summary of the proceedings and rationale for the decision, that the PRB found the Plaintiff was a parole violator based on his own testimony. (See Exhibit D). Based on the facts pled there can be no due process violation. Plaintiff is not really making allegations of due process violations. Rather, he is complaining that he does not like the substantive results of the hearing held by the PRB.

Plaintiff alleges the PRB improperly considered the grand jury testimony of Tyrone McChristian and not his more recent recanting of the testimony. The PRB took great pains to describe their reasons for favoring the prior testimony over the recant, and they further make note

6

that at no time did Inmate Cannon or his counsel avail himself of the compulsory process available to bring Mr. McChristian before the body to testify. His right to complain about the use of the prior testimony transcript, without availing himself of the compulsory process, should be considered a waiver.

Plaintiff further complains that he made a deal with the Cook County State's Attorney's Office that would result in his release in August, 2003. He, and his counsel neglected to make that deal conditional upon the PRB's agreement to the deal. The Cook County State's Attorney can not bind the Illinois Prisoner Review Board, an independent state agency, with an agreement made, as it is a different party. Plaintiff cites no authority for the proposition that the State's Attorney's agreement binds the PRB. The State's Attorneys Office is empowered to prosecute cases in the name of the State of Illinois. This in no way empowers them or creates any additional authority to bind other State Entities in contract or in performance of duties.

## C. THE <u>DOWNIE</u> CONSENT DECREE CONTROLS THE PROCEDURAL MANNER IN WHICH ALL PAROLE REVOCATION HEARINGS MUST BE CONDUCTED

In *Downie v. Klincar*, 759 F.Supp. 425 (N.D. Ill. 1991), Judge Moran entered a consent decree relative to the right of confrontation in a parole revocation hearing (Exhibit #1 is a copy of the *Downie* Consent Decree)[2]. The right of confrontation and cross examination is not absolute. The right to confront and cross examine is subject to the mandates of *Downie*. The right of confrontation is specifically subject to the test of "indicia of reliability". (*See Downie* Consent Decree para. 4). In the case at bar, one of the witnesses had testified before the Cook County

---

[2]   Said Exhibit is a recitation of the Consent Order contained in a Law Review article discussing parole. A copy of the Order has been ordered from the District Court Clerk and is not readily available due to the lack of electronic storage of this case by the court clerk.

7

Grand Jury. His testimony was sworn under oath. The *Downie* Consent Order reflects the recognition that the parole revocation hearing process should not be cumbersome or difficult to administer. The hearing is not designed to determine guilt beyond a reasonable doubt. The Board deals with a preponderance standard and as such some of the typical "due process" safeguards identified with defendants in a felony trial are not present in the proceedings. The *Downie* Decree represents affirmative matter which bars Plaintiff's claim.

## III. SECTION 2-615 OF THE ILLINOIS CODE OF CIVIL PROCEDURE

A § 2-615 motion to dismiss attacks the legal sufficiency of the complaint. 735 ILCS 5/2-615 (a)-(b) (West 2000); *Spillyards*, 278 Ill. App. 3d at 668, 662 N.E.2d at 1361. Motions to dismiss pursuant to § 2-615 admit all well-pleaded facts together with all reasonable inferences that can be gleaned from those facts, but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact upon which those conclusions rest. *Id.*

In this matter, subsections (a) and (b) provide for dismissal where a pleading is substantially insufficient in law. 735 ILCS 5/2-615(a) and (b) (West 2002). Section 2-615 empowers this Court to dismiss the Complaint at hand because Plaintiff failed to state a cause of action against Defendants, the ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES DAVID FRIER and ANDREW FOX.

### A. PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION AGAINST THE ILLINOIS PRISONER REVIEW BOARD, JORGE MONTES, DAVID FRIER AND ANDREW FOX

Plaintiff's Complaint must be stricken and dismissed because he has failed to state a cause of action against the ILLINOIS PRISONER REVIEW BOARD and its members. When determining the sufficiency of a complaint, all allegations are construed in favor of Plaintiff.

*Schever v. Rhodes*, 4016 U.S. 232, 236, (1974). *See also, Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 490, 221 Ill.Dec. 389, 675 N.E. 2d 584, 588 (1996) and *Bryson v. News American Publications, Inc.*, 174 Ill.2d 77, 86, 220 Ill.Dec. 195, 672, N.E. 2d 1207, 1213-14 (1996). If the complaint does not alleged facts necessary to state a cause of action, the deficiency may not be cured by liberal construction. *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554 578 N.E. 2d 600, 602 (2nd Dist. 1991). Conclusions of law or fact unsupported by specific facts or allegations are not taken as true and may not be liberally construed. *Id.* Further, Plaintiff must put forth facts which bring the claim within a legally recognized cause of action *People ex rel. Fahner, v. Carriage West Inc.*, 88 Ill. 2d 300 (1991).

The standards for issuing a Petition for Mandamus are drastically high, and the plaintiff fails to meet that burden. "Mandamus is not a writ of right but an extraordinary remedy to be issued as an exercise of judicial discretion." *Romero v. O'Sullivan*, 302 Ill.App.3d 1031, 1034, 707 N.E.2d 986, 236 Ill.Dec. 648. (4th Dist 1999). citing *Orenic v. Illinois State Labor Relations Board*, 127 Ill.2d 453, 467, 537 N.E.2d 784, 791, 130 Ill.Dec. 455 (1989). "Mandamus is appropriate relief only where a petitioner can demonstrate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the writ." *Id.*

"The party requesting a writ of mandamus bears the burden of demonstrating a clear right to the relief desired." *Romero v. O'Sullivan*, 302 Ill.App.3d 1031, 1034, 707 N.E.2d 986, 236 Ill.Dec. 648 (4th Dist 1999) citing *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill.2d 179, 185, 427 N.E.2d 153, 156, 56 Ill.Dec. 73 (1981).

Because the PRB has followed the *Downie* decree procedures for a revocation hearing, Plaintiff has no clear right to the relief he requests. Consequently, his Petition for Mandamus

9

must fail.

Plaintiff is also asking the Court for a common law Writ of Certiorari, alleging that the violated his rights of Due Process.

Under Illinois law, a common law writ of certiorari is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. *Smith v. Department of Public Aid*, 67 Ill.2d 529, 541, 10 Ill.Dec. 520, 367 N.E.2d 1286 (1977). The standard the court is to apply, to determine whether a writ should issue are the same as those applied under the Administrative Review Law, that is the courts should not interfere in an agency's discretionary authority unless the discretion is used in an arbitrary and capricious manner, or the agency action is against the manifest weight of the evidence. *Dorfman v. Gerber*, 29 Ill.2d 191, 196, 193 N.E.2d 770 (1963), and *Murdy v. Edgar*, 103 Ill.2d 384, 391, 83 Ill.Dec. 151, 469 N.E.2d 1085(1984). *Hanrahan v. Williams*, 174 Ill.2d 268, 673 N.E.2d 251, 220 Ill.Dec. 339 (1996).

All of the evidence attached hereto as well as the information contained herein proves that the Defendants acted in a manner that was consistent with the requirements of the statutes governing revocation of parole and not in any manner that was arbitrary, capricious or violative of due process. Consequently, Plaintiff is not entitled to a Writ of Certiorari, and this case should be dismissed with prejudice.

Here, the Plaintiff's Complaint wholly fails to state any cause of action and fails to plead facts in support of any elements of any viable cause of action. As the Plaintiff's Complaint fails to state a cause of action, it must be stricken and dismissed.

10

**WHEREFORE**, Defendants pray this Honorable Court dismiss the Complaint with prejudice, and for such further relief as this Court deems proper and just.

Respectfully submitted,

LISA MADIGAN, #99000
Attorney General of Illinois

By

RONALD A. RASCIA
ANDREW W. LAMBERTSON
Assistant Attorneys General
Office of the Attorney General
100 W. Randolph St., 13th Flr.
Chicago, Illinois 60601
Attorney for Illinois Prisoner Review Board
(312) 814-3647
(312) 814-1187

G:\04CH16620MTD0 - MC Rev.wpd

11

## APPENDIX C

### *DOWNIE* CONSENT DECREE

This cause coming on to be heard by agreement of the Parties, after due notice, and the Court being duly advised as to the circumstances,

IT IS HEREBY ORDERED:

1. In all final parole revocation hearings, the Prisoner Review Board, and each of its members, shall conduct the final revocation hearings in such a manner that confrontation and cross-examination of adverse witnesses is allowed as described below.

2. Standard of Proof. The standard of proving charges of a violation at a final parole/MSR revocation hearing is a *preponderance of the evidence*. If the evidence supporting the charged violation as a whole shows that it is *more probable than not* that the parolee has violated, as charged, then the Board shall so find. In those cases in which the evidence as a whole does *not* show that it is more probable than not that the parolee has violated, as charged, the Board shall find no violation.

3. Burden of Proof. The charge of a violation, by itself, does not establish evidence of a violation. If the charge is not admitted by the alleged violator, then the charge must be supported by some presentation of evidence sufficient to meet the burden of proof. Except in those cases where a document bears, on its face, constitutionally adequate indicia of reliability or where an additional extrinsic factor enhances the reliability of the documentary evidence, the failure to call witnesses constitutes an absence of sufficient proof. In such a case, the Board shall find that the parolee did not violate as charged.

4. Confrontation. The alleged violator has a right to confront and cross-examine persons who have provided adverse information, whether in a document or by means of live testimony, upon which a charge of violation is based.

a. If the documentation itself contains a sufficient indicator of reliability, examples of which are listed below, the alleged violator need not be granted the right to confront, in person, the preparer of the documentation or any witness whose statements formed the substance of the documentation and the Board may then find a violation as charged. However, the Board may, in its discretion, allow confrontation even where a document contains a sufficient indicator of reliability.

b. If the documentary evidence does not contain a suffi-

EXHIBIT
1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served the foregoing document upon all parties listed on the attached service list by fax, before the hour of 5:00 p.m. on Wednesday, March 9, 2005.

Locke E. Bowman